**No. 23-15087**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

COALITION ON HOMELESSNESS; TORO CASTAÑO; SARAH CRONK;
JOSHUA DONOHOE; MOLIQUE FRANK; DAVID MARTINEZ; TERESA
SANDOVAL; and NATHANIEL VAUGHN,

*Plaintiffs-Appellees*,

v.

CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO POLICE
DEPARTMENT; SAN FRANCISCO DEPARTMENT OF PUBLIC WORKS;
SAN FRANCISCO DEPARTMENT OF HOMELESSNESS AND
SUPPORTIVE HOUSING; SAN FRANCISCO FIRE DEPARTMENT; and
SAN FRANCISCO DEPARTMENT OF EMERGENCY MANAGEMENT,

*Defendants-Appellants*.

On Appeal from the United States District Court
for the Northern District of California
No. 4:22-cv-05502-DMR
Before the Honorable Donna M. Ryu

### PLAINTIFFS-APPELLEES' ANSWERING BRIEF

LAWYERS' COMMITTEE FOR CIVIL RIGHTS
OF THE SAN FRANCISCO BAY AREA
Zal K. Shroff, MJP 804620
131 Steuart Street, Ste. 400
San Francisco, CA 94105
Telephone: (415) 543-9444
zshroff@lccrsf.org

*Attorneys for Plaintiffs-Appellees*
*Coalition on Homelessness, Toro Castaño, Sarah Cronk, Joshua Donohoe,*
*Molique Frank, David Martinez, Teresa Sandoval, and Nathaniel Vaughn*

*Additional Counsel Listed on Inside Cover*

## ADDITIONAL COUNSEL FOR PLAINTIFFS-APPELLEES

LAWYERS' COMMITTEE FOR CIVIL RIGHTS
OF THE SAN FRANCISCO BAY AREA
Elisa Della-Piana, SBN 226462
Hadley Rood, SBN 348168
131 Steuart Street, Ste. 400
San Francisco, CA 94105
Telephone: (415) 543-9444
edellapiana@lccrsf.org
hrood@lccrsf.org

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA
John Thomas H. Do, SBN 285075
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 293-6333
jdo@aclunc.org

LATHAM & WATKINS LLP
Alfred C. Pfeiffer, Jr., SBN 120965
505 Montgomery Street, Ste 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
al.pfeiffer@lw.com

LATHAM & WATKINS LLP
Joseph H. Lee, SBN 248046
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: (714) 540-1235
joseph.lee@lw.com

*Attorneys for Plaintiffs-Appellees*
*Coalition on Homelessness, Toro Castaño, Sarah*
*Cronk, Joshua Donohoe, Molique Frank, David*
*Martinez, Teresa Sandoval, and Nathaniel Vaughn*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1, Plaintiff-Appellee Coalition on Homelessness states that it is a not-for profit corporation, with no parent corporation and no publicly-traded stock.

Dated: April 4, 2023      Respectfully submitted,

LATHAM & WATKINS LLP

By: <u>s/ Alfred C. Pfeiffer, Jr.</u>
     Alfred C. Pfeiffer, Jr.

*Attorneys for Plaintiffs-Appellees*
*Coalition on Homelessness, Toro Castaño,*
*Sarah Cronk, Joshua Donohoe, Molique*
*Frank, David Martinez, Teresa Sandoval,*
*and Nathaniel Vaughn*

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................... 1

II. ISSUES PRESENTED ............................................................... 3

III. STATEMENT OF THE CASE ................................................... 4

    A. Procedural History .............................................................. 4

    B. Asymmetric Evidentiary Record Before the District Court ................. 6

    C. The District Court's Detailed Factual Findings Supporting Preliminary Injunction ............................................................ 10

        1. Unhoused San Franciscans Do Not Have Voluntary Access to Shelter. ........................................................ 10

        2. The City Conducts Criminal Enforcement Operations Without Available Shelter ......................................... 12

        3. Plaintiffs Are Subjected to Criminal Enforcement and Property Destruction. .............................................. 13

        4. The City Violates the Constitution and Irreparably Harms Plaintiffs. ............................................................... 14

    D. The District Court Issued Its Injunction Based on the Factual Record Alone ....................................................................... 15

    E. The District Court's Tailored Preliminary Injunction ......................... 17

    F. San Francisco's Improper Administrative Motion .............................. 18

    G. San Francisco's Overall Response to Homelessness .......................... 19

IV. STANDARD OF REVIEW ....................................................... 20

V. SUMMARY OF ARGUMENT ................................................... 21

VI. ARGUMENT .......................................................................... 25

i

A.   The City Does Not Challenge that a Preliminary Injunction Was Warranted ........................................................................25

B.   The City's Challenge to the Scope of the Eighth Amendment Injunction Cannot Be Raised for the First Time on Appeal and Fails on the Merits ..............................................................26

    1.   The City Waived All Argument as to the Scope of the Injunction. .................................................................26

    2.   The District Court's Injunction is Narrowly Tailored to Adhere Precisely to This Court's Holdings in *Martin* and *Johnson*. ...............................................................27

    3.   The City's Argument as to Individual or Collective Eighth Amendment Rights is Irrelevant. .................30

    4.   The City Cannot Show Clear Error in the Detailed Factual Record Supporting the Injunction. ...............33

C.   The District Court's Eighth Amendment Injunction Is Not Vague and Needs No Clarification......................................38

    1.   The Order is Clear and the City Cannot Meet this Court's Exacting Standard for Vagueness. ...........................38

    2.   This Court Has Addressed the City's False Alarmism Regarding the Scope of the District Court's Injunction. ..........43

    3.   The City's "Workability" Arguments are Waived and Unfounded.......................................................46

D.   The City's Other Scope of Enforcement Arguments Are Waived and Meritless.........................................................47

    1.   No Scope of Enforcement Arguments Were Preserved. ..........47

    2.   There Is No Geographic Safe Harbor Against Criminal Enforcement Anywhere in the City. .........................49

    3.   No Temporal Safe Harbor Exists Against Criminal Enforcement in the City.............................................52

ii

        4.     Police Code Section 169 Must Remain Enjoined as It
             Criminalizes Homelessness. ........................................................54

   E.    The City's Amici Raise Unpersuasive Arguments This Court
        Need Not Consider ..............................................................................56

   F.    The Preliminary Injunction Properly Requires Compliance with
        the City's Bag and Tag Policy............................................................58

VII.  CONCLUSION...............................................................................................61

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*A-1 Ambulance Service, Inc. v. Monterey*,
  90 F.3d 333 (9th Cir. 1996) ...........................................................*passim*

*Alliance for the Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011) ...........................................................26

*Arizona Dream Act Coalition v. Brewer*,
  757 F.3d 1053 (9th Cir. 2014) ...............................................15, 45, 47

*Artichoke Joe's Cal. Grand Casino v. Norton*,
  353 F.3d 712 (9th Cir. 2003) ...............................................................56

*Barrientos v. 1801-1825 Morton LLC*,
  583 F.3d 1197 (9th Cir. 2009) ...........................................................27

*Benjamin v. Fraser*,
  156 F. Supp. 2d 333 (S.D.N.Y. 2001) ...............................................60

*Blake v. City of Grants Pass*,
  No. 18-cv-01823, 2020 WL 4209227 (D. Or. July 22, 2020) ...............44, 46, 55

*Bolker v. C.I.R.*,
  760 F.2d 1039 (9th Cir. 1985) ...........................................................21

*Bresgal v. Brock*,
  843 F.2d 1163 (9th Cir. 1987) ...........................................................56

*Carlos-Kahalekomo v. County of Kauai*,
  No. 20-cv-00320, 2020 WL 4455101 (D. Haw. Aug. 3, 2020)........................51

*Cobine v. City of Eureka*,
  250 F. Supp. 3d 423 (N.D. Cal. 2017)...............................................42

*Cooper Levy v. City of Miami*,
  No. 22-cv-21939, 2022 WL 17477009 (S.D. Fla. Dec. 6, 2022) .....................58

*Easyriders Freedom F.I.G.H.T. v. Hannigan*,
    92 F.3d 1486 (9th Cir. 1996) ......................................................56, 57

*Edmo v. Corizon, Inc.*,
    935 F.3d 757 (9th Cir. 2019) ...............................................................20

*F.T.C. v. EDebitPay, LLC*,
    695 F.3d 938 (9th Cir. 2012) ...............................................................61

*Fitzpatrick v. Little*,
    No. 22-cv-00162, 2023 WL 129815 (D. Idaho Jan. 9, 2023)............................51

*Fortyune v. American Multi-Cinema, Inc.*,
    364 F.3d 1075 (9th Cir. 2004) .......................................................20, 39, 41, 43

*Frank v. City of St. Louis*,
    458 F. Supp. 3d 1090 (E.D. Mo. 2020) ............................................................51

*Friends of Yosemite Valley v. Kempthorne*,
    520 F.3d 1024 (9th Cir. 2008) ...............................................................56

*Fund for Empowerment v. City of Phoenix*,
    No. 22-cv-02041, 2022 WL 18213522 (D. Ariz. Dec. 16, 2022) ....28, 32, 36, 57

*Garcia v. City of Los Angeles*,
    481 F. Supp. 3d 1031 (C. D. Cal. 2020) ............................................................57

*Gieg v. DDR, Inc.*,
    407 F.3d 1038 (9th Cir. 2005) ...............................................................21, 48

*Gomes v. County of Kauai*,
    481 F. Supp. 3d 1104 (D. Haw. 2020)............................................................51

*Hanna v. Peters*,
    No. 2:21-cv-00493-SB, 2022 WL 833165 (D. Or. Mar. 21, 2022)....................60

*Hull v. Little*,
    No. 21-56252, 2022 WL 17818065 (9th Cir. Dec. 20, 2022) ...........................41

*Husain v. Olympic Airways*,
    316 F.3d 829 (9th Cir. 2002) ...............................................................35

*Johnson v. City of Grants Pass*,
   50 F.4th 787 (9th Cir. 2022) .........................................................................*passim*

*Jones v. City of Los Angeles*,
   444 F.3d 1118 (9th Cir. 2006) ...................................................................27, 31

*Justin v. City of Los Angeles*,
   No. 00-cv-12352, 2000 WL 1808426 (C.D. Cal. Dec. 5, 2000) .......................42

*Kohr v. City of Houston*,
   No. 17-cv-01473, 2017 WL 3605238 (S.D. Tex. Aug. 22, 2017).....................42

*Lamb-Weston Inc., v. McCain Foods Inc.*,
   941 F.2d 970 (9th Cir. 1991) ...........................................................................20

*Lawman v. City & County of San Francisco*,
   159 F. Supp. 3d 1130 (N.D. Cal. 2016)............................................................58

*Lentini v. California Center for the Arts, Escondido*,
   370 F.3d 837 (9th Cir. 2004) ...........................................................................35

*In re Lorillard Tobacco Co.*,
   370 F.3d 982 (9th Cir. 2004) ...........................................................................41

*Martin v. City of Boise*,
   920 F.3d 584 (9th Cir. 2019) ....................................................................*passim*

*Melendres v. Arpaio*,
   695 F.3d 990 (9th Cir. 2012) .....................................................................15, 26

*Melendres v. Arpaio*,
   784 F.3d 1254 (9th Cir. 2015) ...............................................................58, 59, 60

*Menotti v. City of Seattle*,
   409 F.3d 1113 (9th Cir. 2005) .........................................................................58

*Nader v. Brewer*,
   386 F.3d 1168 (9th Cir. 2004) .........................................................................20

*National Wildlife Federation v. National Marine Fisheries Service*,
   886 F.3d 803 (9th Cir. 2018) ...........................................................................35

vi

*Phillips v. City of Cincinnati,*
    479 F. Supp. 3d 611 (S.D. Oh. 2020) .................................................43

*Redman v. County of San Diego,*
    942 F.2d 1435 (9th Cir. 1991) ...........................................................58

*Roman v. Wolf,*
    977 F.3d 935 (9th Cir. 2020) .............................................................59

*Russian River Watershed Protection Committee v. City of Santa Rosa,*
    142 F.3d 1136 (9th Cir. 1998) ...........................................................56

*Sharp v. Weston,*
    233 F.3d 1166 (9th Cir. 2000) ...........................................................58

*Shell Offshore, Inc. v. Greenpeace, Inc.,*
    709 F.3d 1281 (9th Cir. 2013) ...........................................................25

*Shipp v. Schaaf,*
    379 F. Supp. 3d 1033 (N.D. Cal. 2019)..............................................51

*Singleton v. Wulff,*
    428 U.S. 106 (1976)...........................................................................61

*Stone v. City & County of San Francisco,*
    968 F.2d 850 (9th Cir. 1992) .............................................................59

*Swann v. Charlotte-Mecklenburg Board of Education,*
    402 U.S. 1 (1971)...............................................................................59

*United Nurses Associations of California v. National Labor Relations Board,*
    871 F.3d 767 (9th Cir. 2017) .............................................................48

*United States v. Miller,*
    588 F.2d 1256 (9th Cir. 1978) ...........................................................61

*Walczak v. EPL Prolong, Inc.,*
    198 F.3d 725 (9th Cir. 1999) .............................................................20

*Warren v. City of Chico,*
    No. 21-cv-00640, 2021 WL 2894648 (E.D. Cal. July 8, 2021) .................*passim*

*Women Prisoners of District of Columbia Department of Corrections v. District of Columbia*,
  93 F.3d 910 (D.C. Cir. 1996) ............................................................. 60

*Zepeda v. United States I.N.S.*,
  753 F.2d 719 (9th Cir. 1983) ............................................................ 21

## STATUTES

California Penal Code § 148(a) .......................................................... 17

Police Code § 169 ........................................................... 54, 55, 56

S.F., Cal., Park Code § 3.13 .............................................................. 53

## RULES

Fed. R. Civ. P. 65 ........................................................................ 4

## CONSTITUTIONAL PROVISIONS

Fourth Amendment ..................................................................*passim*

Eighth Amendment ..................................................................*passim*

## I.    INTRODUCTION

The City and County of San Francisco[1] punishes hundreds of involuntarily homeless individuals each year simply for existing in public.  On appeal of the preliminary injunction, the City does not substantively contest the district court's core factual findings.  The City's shelter system is thousands of beds short, functionally at capacity, and effectively closed to voluntary and practical access. San Francisco cannot show that these findings are clearly erroneous, and in fact conceded these points below before the district court.  In this context, the district court's ruling is simply a faithful application of the Eighth Amendment and this Court's rulings in *Martin v. Boise* and *Johnson v. Grants Pass*.

Unable to demonstrate that the district court made a clear factual error, San Francisco resorts to raising new arguments on appeal.  The City disguises unsubstantiated arguments about hypothetical scenarios as a challenge to the scope of the district court's injunction.  But, as the district court's order notes, the City "wholly fail[ed] to object to or even address the substance of the proposed preliminary injunction, thereby conceding these issues."  1-ER-0049.  These arguments have not been properly preserved and should not be entertained.

---

[1] Defendants-Appellants include both the City and its individual agencies, which for convenience will be collectively referred to as the "City" or "San Francisco."

1

Preservation issues aside, the City cannot establish abuse of discretion. The district court's injunction is clear and precisely tailored to the exact prohibitions dictated by this Court in *Martin* and *Johnson* for the protection of "involuntarily homeless" individuals. It only prohibits San Francisco from punishing people who have no practical access to shelter. The district court found that Plaintiffs, along with thousands of other unhoused residents in San Francisco who are involuntarily homeless, have been threatened, cited, and arrested under laws that unlawfully criminalize the mere status of being homeless.

The City claims that it only punishes unhoused individuals who "choose" to be homeless. But the district court found that the City's assertion entirely lacks factual support. There is no practically available shelter *anywhere* in the City prior to enforcement. Nonetheless, the preliminary injunction clearly permits enforcement against individuals who do have access to shelter or housing. As a result, the City presents no question of fact or law for this Court to decide on appeal—preserved or otherwise.

Without a basis for appeal, the City relies heavily on unsupported alarmism. It draws a specious connection to the opioid crisis to distract from its own longstanding failure to increase affordable housing and to obscure its reliance on racialized criminalization policies that have exacerbated the housing crisis. The City claims it will be powerless to solve homelessness unless it can continue to

2

criminalize those without access to shelter. But San Francisco's own *amici* recognize that the injunction does not prevent the City from providing housing and services to unhoused individuals or from otherwise working to address homelessness. The City's police bulletin regarding compliance with the injunction also acknowledges myriad ways the City can maintain public health, safety, and accessibility without criminalizing homelessness. This Court has rejected such false alarmism when—as here—it has no substantiation in the record. *Johnson v. City of Grants Pass*, 50 F.4th 787, 813 n.35 (9th Cir. 2022) ("There are no facts in the record to establish that *Martin* has generated 'dire' consequences for the City.").

San Francisco proclaims that the district court's injunction puts the City in the "impossible position" of being forced to invest in shelter and affordable housing. But this case is not about housing policy, and the district court's order contains no such requirement. The City retains complete discretion over its multi-pronged response to the homelessness crisis, so long as it does not violate the constitutional rights of unhoused residents.

Because the City's appeal identifies no reversible error in the district court's decision and presents no preserved arguments for this Court to consider, this Court should reject the appeal and affirm the decision below.

## II. ISSUES PRESENTED

This appeal presents the following issues:

1.      Did the district court make a clear factual error in finding that the City punishes involuntary homelessness when it granted limited injunctive relief consistent with this Court's specific holdings in *Martin* and *Johnson*?

2.      Is the district court's injunction so vague that it provides no reasonably specific meaning as to the enjoined conduct pursuant to Federal Rule of Civil Procedure 65?

3.      Did the City preserve its novel arguments related to the scope and workability of the injunction or develop the necessary record for them to be considered on appeal?

4.      Did the district court abuse its discretion by enjoining the City from summarily seizing and destroying property in violation of the City's own policy and the Fourth Amendment?

## III.   STATEMENT OF THE CASE

### A.   Procedural History

On September 27, 2022, Plaintiffs filed their motion for preliminary injunction.  Plaintiffs' motion was accompanied by expert analysis of public data regarding criminalization of homelessness as well as declarations from twenty-five unhoused individuals, five volunteer monitors, and a former City staff member— who collectively witnessed hundreds of law enforcement interactions with unhoused residents across the City.  1-ER-0003-5; 7-ER-1557-10-ER-2529.  The district court

4

first gave San Francisco an additional week to respond to Plaintiffs' motion and then granted another four-week extension at the City's request. 7-ER-1504-05. The City filed its opposition on November 15, 2023, seven weeks after Plaintiffs filed the motion.

On October 18, 2022, the district court ordered the parties to meet and confer regarding any expedited discovery necessary to brief the preliminary injunction motion. 6-ER-1487-90. On November 7, 2022, the district court granted Plaintiffs' request for expedited discovery. 6-ER-1450-52. The district court recognized that San Francisco had exclusive control over vast amounts of individualized and aggregate data that the City could potentially rely on in its response without giving Plaintiffs any opportunity to assess and rebut it. *See* 6-ER-1469; 6-ER-1453. Accordingly, to the extent the City chose to rely on any individual records in its opposition, the district court ordered the City to disclose the relevant and related records after its filing. 6-ER-1450-52.

The City's opposition did not include individual or aggregate law enforcement data, contained no expert analysis, and submitted no declarations from percipient witnesses regarding the hundreds of specific law enforcement interactions addressed in Plaintiffs' motion. 1-ER-0038-39; 5-ER-1012-6-ER-1449. The City's primary opposition to Plaintiffs' motion was to restate their written policies and argue that Plaintiffs' evidence was stale or hearsay. 1-ER-0004 n.3; 5-ER-1030-33.

5

On December 1, 2022, Plaintiffs filed a reply with rebuttal evidence that included a supplemental expert analysis with newly available criminal enforcement data demonstrating the same trends as established in Plaintiffs' opening brief, four additional monitor declarations, four additional declarations from unhoused individuals, and two additional declarations from former city employees—describing San Francisco's more recent criminalization and corroborating prior evidence. 1-ER-0005; 3-ER-0496; 5-ER-0974. Not only did the City fail to timely object to Plaintiffs' rebuttal evidence, but the district court denied the untimely objections as meritless. 1-ER-0004 n.4 (noting that the objections were inexplicably filed five days late and that they contained improper argument on the motion). The district court expressly overruled San Francisco's other evidentiary objections as improperly raised, vague, or unconvincing. 1-ER-0004 n.3 (overruling the City's hearsay objection and noting that proper weight was given to all the evidence presented; overruling the City's "staleness" arguments by noting that the relevant policies had not changed and that Dr. Herring's supplemental declaration affirmed the same previously observed trends for 2022).

## B. Asymmetric Evidentiary Record Before the District Court

Plaintiffs presented an evidentiary record documenting mass criminalization of homelessness over the past three years despite an extreme shelter shortage and no practical access to shelter for thousands of unhoused residents. 1-ER-0005-06; 1-

ER-0028-30; 3-ER-0376. Plaintiffs' evidence included two declarations from an expert sociologist analyzing years of the City's enforcement data, twenty-nine declarations from Plaintiffs and impacted unhoused individuals, nine declarations from eyewitness monitors, three declarations from former City employees tasked with responding to homeless encampments, and no fewer than forty-five other supporting exhibits. 1-ER-0003-5; 7-ER-1557-10-ER-2529; 3-ER-0496-5-ER-0974.

Plaintiffs all attested that they faced enforcement, and a number reported having been cited or arrested. *See, e.g.*, 7-ER-1712; 7-ER-1714; 7-ER-1717; 7-ER-1728; 7-ER-1731; 3-ER-548. Plaintiffs' expert found that the City cited or arrested unhoused people thousands of times for sleeping or lodging in public in the last three years, and that police issued "move along" orders under threat of citation or arrest thousands more times each year. 1-ER-0049; 7-ER-1614-20. Plaintiffs' percipient witness declarations included eyewitness information about dozens of specific instances of criminal enforcement without access to shelter. 3-ER-0376; 1-ER-0039; 7-ER-1671; 7-ER-1677-78; 7-ER-1685-86; 7-ER-1698; 7-ER-1706-07; 8-ER-1756-57; 8-ER-1760; 8-ER-1767; 8-ER-1775-76; 8-ER-1784; 8-ER-1799; 8-ER-1804; 8-ER-1807; 8-ER-1812-13; 8-ER-1822.

The City's response did not challenge the fact that it has a shelter shortfall "in the thousands." 3-ER-0375; 1-ER-0005-07; 1-ER-0037-38; 1-ER-0049. The City

conceded that unhoused residents have no real ability to voluntarily access shelter *anywhere* in the City because the overcrowded shelter system has shut down its waitlists and same-day lines. *See* 3-ER-0390 (district court: "Does the City concede that there is no avenue for a homeless individual to . . . just voluntarily access a shelter bed at this juncture?" The City: "That is correct."); s*ee also* 1-ER-0042-43. The City also failed to rebut any of Plaintiffs' percipient witness declarations including eyewitness information about dozens of instances of criminal enforcement without access to shelter. 3-ER-0376; 1-ER-0039.

The City did not rebut Plaintiffs' expert analysis demonstrating that its police threatened unhoused individuals with criminal enforcement and cited or arrested unhoused residents *thousands of times* over the past several years purely for sleeping or lodging in public. 1-ER-0029; 1-ER-0039 ("Defendants do not counter Plaintiffs' evidence that SFPD has cited and arrested individuals for sleeping or lodging in public thousands of times from 2018 to October 2022 despite the lack of available shelter."). The City also did not contest Plaintiffs' expert finding that police forced unhoused people to "move along" under threat of citation or arrest for sleeping or lodging in public thousands more times each year. 1-ER-0049.

Instead, the City's evidentiary submissions consisted solely of declarations by City officials that restated San Francisco's written policies. 1-ER-0038. Those policies purport that the City does not subject unhoused individuals to criminal

8

enforcement for being homeless except following a Healthy Streets Operation Center (HSOC) resolution during which shelter is available and offered to each unhoused individual onsite before any enforcement takes place. *See, e.g.*, 1-ER-0038-39.

But the City did not present evidence controverting Plaintiffs' substantial showing that it fails to follow its own policies. 1-ER-0038; 1-ER-0039; 1-ER-0041; 5-ER-1035-1195. For example, San Francisco did not introduce any evidence to suggest that the City's prior citations and arrests of unhoused individuals only occurred after valid offers of shelter at HSOC resolutions. 1-ER-0043; 3-ER-0374-76. On the contrary, the City admitted that it has a practice of conducting HSOC resolutions without sufficient shelter on hand for each individual at an encampment. 1-ER-0027; 1-ER-0028 n.13. Nor did the City dispute that these forced displacement operations began before the City knew whether *any* specific shelter was available. 1-ER-0013; 1-ER-0039; 5-ER-1021. The City also did not contest that the vast majority of enforcement actions occurs outside of HSOC resolutions, involving only the police. 1-ER-0025-26; 1-ER-0040; 5-ER-1024. The district court found that Plaintiffs' factual record was "largely unchallenged." 1-ER-0039.

The record regarding the City's violations of its own "bag-and-tag" policies, which purport to provide safeguards against taking unhoused individuals' property without due process, is similarly one-sided. The district court found copious

uncontested instances of the City taking and destroying individuals' property in violation of the City's own policies.  1-ER-0045-46.

### C.    The District Court's Detailed Factual Findings Supporting Preliminary Injunction

Based on the record, the district court correctly concluded that "Plaintiffs are likely to succeed on the merits of their claim that the City violated the Eighth Amendment by imposing or threatening to impose criminal penalties against homeless individuals . . . without giving them the option of sleeping indoors."  1-ER-0043.  On Plaintiffs' Fourth Amendment claims, the district court found that "Plaintiffs have shown a likelihood of success . . . based on San Francisco's 'seizing and destroying' homeless individuals unabandoned property."  1-ER-0046.

### 1.    Unhoused San Franciscans Do Not Have Voluntary Access to Shelter.

The district court's order is replete with factual findings that establish that individual unsheltered San Franciscans do not have practical access to available and appropriate shelter.   The district court found that San Francisco's unhoused population exceeded the number of available shelter beds by thousands.  1-ER-0049; 1-ER-0005 ("It is undisputed that San Francisco does not have enough available shelter beds for all homeless San Franciscans.").  The district court also found that the City disbanded its shelter waitlist with 1,000 people still actively waiting for shelter, closed its same-day shelter lines more than two years ago, and cannot ensure

a shelter placement to any unhoused individual who calls the City's hotline. 1-ER-0006-07; 1-ER-0042-43; 7-ER-1568; 7-ER-1604-05. In fact, the district court determined that the only real way an unhoused person can hope to receive a shelter bed is to be subject to an enforcement action. 1-ER-0026-27 ("the only clear way to access shelter is via an encampment resolution while under threat from law enforcement); Appellees' Request for Judicial Notice ("ARJN"), Exhibit A, at 7 (same); 3-ER-0389 ("the City concedes . . . that there's no voluntary avenue to accessing a bed, that the only way to access a bed is if there's an enforcement process where one is offered, if available."); 3-ER-0401.

The district court also rejected the City's asserted hypothetical of mass shelter refusals, noting that the uncontested facts established that unhoused individuals in the City had no means to access shelter and thus had nothing to refuse. 1-ER-0038 ("According to Defendants, [e]ncampment occupants in San Francisco asked to vacate public property have access to adequate temporary shelter, even if many choose not to use it. [But] Defendants' position is wholly unconvincing." (internal quotations omitted)).

San Francisco expressly conceded these facts on the record. 1-ER-0042-43. As a result, the district court concluded that unhoused individuals in San Francisco are "involuntarily homeless" based on the well-developed and uncontested record that San Francisco's shelter system is both at capacity and closed to voluntary access.

*See, e.g.*, 1-ER-0042 ("[i]t is beyond dispute that homeless San Franciscans have no voluntary 'option of sleeping indoors,' and as a practical matter 'cannot obtain shelter'"); 1-ER-0043 ("the parties agree that at this time, a homeless San Franciscan who wants a shelter bed has no avenue to ask for one, much less get one").

## 2. The City Conducts Criminal Enforcement Operations Without Available Shelter.

The district court also found that "a veritable mountain" of evidence demonstrated San Francisco does not in fact make shelter available to unhoused residents prior to criminal enforcement for sleeping or lodging in public. 3-ER-0376; 1-ER-0039-40 ("Plaintiffs also offer evidence that closures took place without offers of bed space, either because SFHOT members did not make the offer or because SFHOT members were not even present."); 7-ER-1573-79 (describing Dr. Herring's analysis of three years of City data and the direct observations and experiences of thirty-one sworn declarants).

The district court further found that "Defendants do not meaningfully rebut evidence that San Francisco initiates encampment closures without actually knowing whether any shelter beds will be available to encampment residents, and that closure proceeds anyway, with many residents having been displaced." 1-ER-0039; 3-ER-0376 ("I don't think [Defendants' evidence] really rebuts anything close to the evidence . . . produced by the plaintiffs in their motion on this point.").

The district court recognized, and the City conceded, that HSOC teams begin their encampment closures without knowing whether shelter is available. Rather, the City knows it will not have shelter beds *for the vast majority* of the individuals at an encampment, if any. 1-ER-0028 n.13; 5-ER-1021; 5-ER-1091-93; 5-ER-1097-98. The district court recounted robust evidence "that homeless individuals have been displaced even when there are no available shelter beds." 1-ER-0028.

The district court also found that formal HSOC encampment resolutions constitute a small fraction of the City's criminal enforcement actions. Police enforce anti-homeless laws and order unhoused people's belongings destroyed daily without even the guise of offering shelter. 1-ER-0024-26; 1-ER-0039-40; 7-ER-1572-73; 3-ER-0563. These thousands of criminal enforcement actions led solely by police reflect the bulk of the City's enforcement actions against unhoused individuals for sleeping or lodging in public despite having no access to shelter. 7-ER-1572-73; 1-ER-0025-26; 1-ER-0040.

3.   Plaintiffs Are Subjected to Criminal Enforcement and Property Destruction.

The district court found that each individual Plaintiff—as well as members of the Plaintiff Coalition on Homelessness—submitted evidence of being threatened with citation and arrest for sleeping in public in San Francisco, including Plaintiff Toro Castaño and Plaintiff Coalition on Homelessness member Todd Bryant, who

were both cited for lodging on public property.[2]  1-ER-0018-24; 8-ER-1756-57; 7-ER-1666.

The district court also found the City had no "basis to challenge" Plaintiffs' expert's review of the City's own data regarding the 3,000 arrests and citations against unhoused individuals for sleeping, lodging, or refusing to "move along."  1-ER-0029-30; 1-ER-0038; 3-ER-0369.  In addition, the district court determined that the City engaged in widespread seizure and destruction of homeless individuals' unabandoned personal property.  1-ER-0045-46; 1-ER-0030; 7-ER-1576-79.

> ### 4.  The City Violates the Constitution and Irreparably Harms Plaintiffs.

Based on this "largely unchallenged" factual record, the district court determined that Plaintiffs were likely to succeed on the merits of their Eighth Amendment claims.  1-ER-0039; 1-ER-0043.  The district court likewise concluded that San Francisco did not controvert Plaintiffs' evidence of widespread property destruction in violation of the Fourth Amendment.  1-ER-0045; 1-ER-0030.

---

[2] The City and their *amici* inaccurately claim that "[n]one of the Plaintiffs alleged that they had ever been arrested or cited for any offense related to the enforcement of the challenged sit/sleep/lie laws."  Br. at 19; *see also* League of Cities Amicus, at 18 ("Plaintiffs also have not alleged that they have ever been arrested or prosecuted for violating state or local anti-camping or anti-sleeping laws.").  This is demonstrably false.

14

The district court recognized that the deprivation of Plaintiffs' constitutional rights establishes irreparable harm. 1-ER-0046; *see Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("[t]he deprivation of constitutional rights 'unquestionably constitutes irreparable injury'"). The district court held that Plaintiffs established "a likelihood that Defendants' policy violates the U.S. Constitution," thereby establishing that "both the public interest and the balance of the equities favor a preliminary injunction." 1-ER-0047; *see Arizona Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014). Independent of the constitutionality of the sweeps, the district court credited Plaintiffs' uncontroverted public health evidence on the harmful impact of sweeps and Plaintiffs' accounts of the "traumatizing" and "dehumanizing" nature of the City's actions. 1-ER-0031; 1-ER-0046; 7-ER-1623-28.

### D. The District Court Issued Its Injunction Based on the Factual Record Alone

The City's opposition to Plaintiffs' preliminary injunction motion solely challenged the admissibility of Plaintiffs' evidence, otherwise merely reciting the City's policies without defending its actual conduct. 5-ER-1024, 1027. For the first time during the preliminary injunction hearing, however, San Francisco attempted to raise novel legal arguments. 1-ER-0042 ("At the hearing, Defendants argued for the first time that the formula announced in *Martin* and *Johnson* for demonstrating an 8th Amendment violation should be interpreted differently when applied to this

15

case."). After failing to raise the issue in briefing, and failing to cite any of its own records to rebut Plaintiffs' evidence, the City argued that Plaintiffs should bear the burden of demonstrating that unhoused individuals are "involuntarily homeless" under *Johnson*, and that *Martin* requires an individualized assessment of whether each unhoused person had access to shelter before enforcement. 1-ER-0042; 3-ER-0375-76. The City essentially asked the district court to ignore *Martin* and *Johnson*'s instructions that it should examine availability of shelter and the number of unhoused people in determining whether a municipality can conduct anti-homelessness enforcement.

The district court found that the City had waived these various arguments by failing to brief them. 3-ER-0387; ARJN at 6. Regardless, the district court determined that it did not need to reach any decision regarding the correct interpretation and scope of *Martin* and its progeny because the factual record made clear that thousands of unhoused individuals are involuntarily homeless in San Francisco, unable to access shelter, and nonetheless subjected to unconstitutional enforcement under any reading of the Eighth Amendment's requirements. 1-ER-0042-43.

The district court also found "ample evidence that homeless individuals are routinely displaced without a firm offer (or in many instances, any offer) of a shelter bed." 1-ER-0043. The district court found Plaintiffs submitted "ample evidence"

16

of encampment closures occurring without available bed space or offers of shelter, specifically noting that the City's rebuttal evidence was "thin" and "unconvincing." 1-ER-0039-40. On that record, the district court found that it "need not decide whether Defendants' reading of *Martin* and *Johnson* is correct, because their position lacks factual support." *Id.*

### E. The District Court's Tailored Preliminary Injunction

On December 23, 2022, the district court granted Plaintiffs' preliminary injunction. The district court enjoined San Francisco "from enforcing or threatening to enforce, or using California Penal Code section 148(a) to enforce or threaten to enforce, the following laws and ordinances to prohibit *involuntarily homeless individuals* from sitting, lying, or sleeping on public property."[3] 1-ER-0049; 1-ER-0051. The injunction included a provision suspending even this narrowly tailored restriction should the number of shelter beds available in San Francisco exceed the number of homeless individuals. 1-ER-0051.

The injunction expressly permits enforcement against individuals who *do* have access to shelter or housing prior to enforcement and are therefore not "involuntarily homeless." 1-ER-0037 ("The Ninth Circuit also explained that its holding 'does not cover individuals who do have access to adequate temporary

---

[3] Unless otherwise noted, emphasis added.

shelter, whether because they have the means to pay for it or because it is realistically available to them for free, but who choose not to use it . . .'" (quoting *Martin*)).

The preliminary injunction also clearly permits San Francisco to enforce all manner of sidewalk safety and public health laws against unhoused people; the City is merely proscribed from punishing unhoused people simply because they are involuntarily homeless. 1-ER-0048 ("Plaintiffs do not ask the court to enjoin any ordinances targeting public health nuisances or willfully obstructing streets, sidewalks, or other passageways, as discussed below"). The police enforcement bulletin issued a month *after* the injunction describes the scope of the injunction and its limitations on SFPD's authority to enforce certain sit/lie/sleep laws against the homeless, while permitting the enforcement of all other laws. *See* Appeal Dkt. No. 13 at 113-15; *see also* 1-ER-0049.

### F.    San Francisco's Improper Administrative Motion

On January 3, 2023, San Francisco filed an administrative motion asking the district court to authorize its ongoing HSOC encampment resolutions, despite the district court's factual findings that the City's conduct at those operations violates the Eighth Amendment by threatening, citing, and arresting unhoused individuals before the possibility of a shelter offer. 3-ER-0316-22. On January 12, 2023, the district court rejected San Francisco's administrative motion on procedural grounds. 2-ER-0093. But the district court explicitly instructed the City that it could file an

"appropriate motion"—which may be a motion for reconsideration depending on the City's arguments—to obtain a ruling on the substantive issues its improper motion raised. 2-ER-0076-77; 2-ER-0093. The City never filed any such motion. ARJN at 4-5. At the same time, the district court raised a series of "questions and concerns" with respect to San Francisco's initial compliance with the injunction. 2-ER-0077-84.

### G. San Francisco's Overall Response to Homelessness

The City describes a litany of programs led by the Department of Homelessness and Supportive Housing, purporting that it is "focused on providing shelter and housing to persons experiencing homelessness." Br. at 6-11. This is irrelevant to whether the district court abused its discretion in granting a preliminary injunction. It also ignores the City's blatant and well-documented failure to properly address its affordable housing crisis—with dire consequences for all its residents. *See generally* 11-ER-2553-66. The City's own Planning Department admits that the City's decades-long failure to meet its own meager affordable housing targets is driving record displacement and homelessness in the City—thrusting the City's longtime residents out onto the street in record numbers. 11-ER-2557-58.

Meanwhile, the City has enacted more ordinances criminalizing homelessness than possibly any city in the United States. 11-ER-2560. The City channels money into harmful criminalization despite clear data showing that criminal enforcement is

extremely expensive and entirely ineffective at ending homelessness. 11-ER-2563; 11-ER-2602-05; 7-ER-1623-28.

## IV. STANDARD OF REVIEW

A district court has considerable discretion in fashioning suitable relief and defining the terms of an injunction. *Lamb-Weston Inc., v. McCain Foods Inc*., 941 F.2d 970, 974 (9th Cir. 1991). This Court "will not set aside injunctions under Rule 65(d) unless they are so vague that they have no reasonably specific meaning." *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1087 (9th Cir. 2004).

"[A] district court's order regarding preliminary injunctive relief" is also subjected to uniquely "limited review." *Nader v. Brewer*, 386 F.3d 1168, 1169 (9th Cir. 2004), *citing Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 730 (9th Cir. 1999) (appellate review is "much more limited than review of an order involving a permanent injunction"). Preliminary injunctions are reviewed for abuse of discretion, "which occurs only if the district court based its decision on either an erroneous legal standard or clearly erroneous factual findings." *Nader*, 386 F.3d at 1169. The Ninth Circuit must accept the district court's factual findings unless they are "illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 784-85 (9th Cir. 2019) (internal quotations and citations omitted). A district court's preliminary injunction granted on the facts will not be disturbed unless the order "rests on an erroneous

legal premise and, thus, constitutes an abuse of discretion." *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 724 (9th Cir. 1983).

This Court does not entertain mixed questions of fact and law raised for the first time on appeal and never presented to or preserved in the district court. *A-1 Ambulance Serv., Inc. v. Monterey*, 90 F.3d 333, 339 (9th Cir. 1996) (unpreserved issue can only be considered if the issue "is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed") (*quoting Bolker v. C.I.R.*, 760 F.2d 1039, 1042 (9th Cir. 1985)); *see also Gieg v. DDR, Inc.*, 407 F.3d 1038, 1046 n.10 (9th Cir. 2005) ("Appellees did not make this argument in the District Court, which treated the issue as undisputed. An appellate court will not consider arguments not first raised before the district court unless there are exceptional circumstances").

## V.   SUMMARY OF ARGUMENT

The district court carefully considered a well-developed factual record and issued a tailored preliminary injunction that precisely tracks Ninth Circuit law and *the City's own policies*. Yet the City decries its current situation as "impossible" and the district court's decision as "overreach." The City's protest is tantamount to an admission that it expects to habitually violate the law. As the district court found, the City punishes involuntarily homeless individuals in violation of the Eighth Amendment, and destroys their belongings in violation of the Fourth Amendment.

The City ignores these findings and seeks to resume these unconstitutional practices. The preliminary injunction is entirely appropriate and necessary to prevent this.

The district court made detailed findings establishing key facts which the City never disputed. Unhoused individuals in the City outnumber available shelter beds by the thousands. There is no voluntary access to shelter for unhoused individuals in the City; the shelter system is closed, at full capacity, and no longer taking people on its waitlist, admitting people waiting in same-day lines, or providing shelter via hotline. The City has arrested or cited unhoused individuals at least 3,000 times in the past three years under ordinances criminalizing homelessness.

Because the City could not controvert Plaintiffs' extensive record, the district court concluded that there was no factual support for the City's claim that, under its policy, it provides firm offers of adequate shelter prior to criminal enforcement against unhoused individuals. Indeed, the district court found that the City's practice completely contradicts this policy, routinely displacing homeless individuals in thousands of enforcement interactions initiated against unhoused people each year without even attempting to offer shelter, while knowing that the City does not have sufficient shelter.

This enforcement directly harms Plaintiffs. The seven individual plaintiffs in this action have each been threatened with citation and arrest. Mr. Castaño, like hundreds of others, has been cited for sleeping in public. Many of Plaintiff Coalition

on Homelessness' unhoused members have been threatened, cited, and arrested over the past few years. Under threat by police, Plaintiffs were repeatedly displaced and had their property destroyed. Because the City persists in criminal enforcement despite the lack of shelter access, the district court determined that—under *any* proposed interpretation of the law—the factual record undisputedly demonstrated that the City unconstitutionally punishes individuals who are involuntarily unhoused.

On appeal, the City substantially ignores the district court's factual findings. Its Statement of the Case never references any of these findings. Instead, the City argues against the scope of the injunction. These arguments were expressly waived before the district court and should not be considered here.

Regardless, the district court faithfully applied this Court's established precedents in *Martin* and *Johnson*. The injunction applies only to enforcement against involuntarily homeless individuals in San Francisco—individuals who do not have practical and voluntary access to shelter. The City quibbles that "involuntary homelessness" should be an individual, not collective, determination. But aggregate information on shelter availability merely informs the ultimate question of whether any individual is involuntarily homeless. Regardless, the injunction allows enforcement against any individual who is not involuntarily homeless. The City also seeks to justify broad criminal enforcement of anti-

23

homeless laws on the pretense that it offers shelter to a fraction of unhoused individuals. But this blatant attempt to evade the law does not provide a basis for reversal.

It also strains credulity to suggest that the district court's order is so vague as to merit reversal because of the terms "involuntarily homeless" or "threat of enforcement." The Ninth Circuit itself has defined the former, and the latter is a commonplace term in injunctions issued across the country. The district court's order needs no correction for vagueness. The injunction is similarly clear and narrowly drawn as to the Fourth Amendment: it simply requires the City to comply with their own Bag and Tag Policy relating to seized property.

The remainder of the City's brief concerns issues argued for the first time on appeal. The record contains no support for these arguments, which the City chose not to develop before the district court and are waived. The City argues for the first time that their encampment resolutions identify other places and times where unhoused individuals can be lawfully present, and that certain of the City's ordinances only target those with specific survival belongings for criminal enforcement. The record is silent on these purported safe harbors, and the undisputed evidence instead demonstrates that involuntarily homeless individuals are subject to criminal punishment everywhere and at all times. The injunction is also limited to preclude the City's use of the enjoined ordinances only when doing

so criminalizes involuntary homelessness—eliminating any doubt that the injunction is closely tailored to the scope of Eighth Amendment protections.

The City utterly fails to demonstrate that the district court clearly erred in making detailed factual findings sufficient to grant the preliminary injunction or that the district court abused its discretion in analyzing the factors to consider in determining whether a preliminary injunction is warranted. The City's arguments as to the scope of the injunction—the only arguments raised on appeal—are both waived and without legal or evidentiary support. Because the district court committed no reversible error, this Court has no basis to reverse the district court's decision.

## VI.    ARGUMENT

### A.    The City Does Not Challenge that a Preliminary Injunction Was Warranted

The City does not challenge the district court's finding that a preliminary injunction is appropriate based on the factual record. This is not surprising, as the district court considered the largely unrefuted evidence and determined that Plaintiffs are likely to succeed on the merits of their Eighth Amendment and Fourth Amendment claims. 1-ER-0042-43; 1-ER-0046; *supra* Section III. Plaintiffs' likelihood of success on the merits alone is sufficient to support the preliminary injunction. *See Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013). But the district court also determined that Plaintiffs established the other

preliminary injunction factors. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). After all, the preliminary injunction merely ensures the City abides by the Constitution, which is always in the public interest. *Melendres*, 695 F.3d at 1002.

The City does not challenge any of these conclusions of fact and law here. The City has thus conceded that it is violating the Constitution and has been necessarily enjoined from doing so. Its only challenge is to the scope of that injunction, but the City provides no basis to limit the scope of the district court's narrow injunction.

**B.** **The City's Challenge to the Scope of the Eighth Amendment Injunction Cannot Be Raised for the First Time on Appeal and Fails on the Merits**

1. The City Waived All Argument as to the Scope of the Injunction.

As the district court held, the City failed to raise *any* argument as to the scope of the district court's injunction in their opposition to Plaintiffs' preliminary injunction motion, and thus waived these arguments. *See* 1-ER-0049; 3-ER0385-29 ("You had 25 pages to do an opposition. It was 17 pages long. There was not one word devoted to challenging the request for preliminary injunctive relief . . . the City has waived its right to say how the Court should exercise its discretion"); ARJN at 8 ("the court—and Plaintiffs—never had the opportunity to consider Defendants' arguments . . . as applied to the factual record in this case . . . despite the court having

invited Defendants to raise it properly"). It is inappropriate for the City to raise any of these scope issues for the first time on appeal. *See Barrientos v. 1801-1825 Morton LLC*, 583 F.3d 1197, 1215-16 (9th Cir. 2009) ("[Appellant] waived the objection to the scope of relief by failing to raise it before the district court."); 3-ER0385-86 ("none of this is in the opposition brief").[4]

2. <u>The District Court's Injunction is Narrowly Tailored to Adhere Precisely to This Court's Holdings in *Martin* and *Johnson*</u>.

The district court enjoins the City from enforcing "laws and ordinances to prohibit involuntarily homeless individuals from sitting, lying, or sleeping on public property . . . as long as there are more homeless individuals in San Francisco than there are shelter beds available"). 1-ER-0051. The district court's injunction follows *Martin* to the letter. *Martin v. City of Boise*, 920 F.3d 584, 604, 617 (9th Cir. 2019) ("so long as there is a greater number of homeless individuals in a jurisdiction than the number of available beds in shelters, the jurisdiction cannot prosecute homeless individuals for involuntarily sitting, lying and sleeping in public") (internal quotations omitted); *see also Jones v. City of Los Angeles*, 444 F.3d 1118, 1138 (9th Cir. 2006) ("so long as there is a greater number of homeless

---

[4] The district court gave the City another opportunity to challenge the scope of the injunction, specifically inviting the City to file a properly noticed motion if it wished to seek reconsideration. 2-ER-0076-77; 2-ER-0093. The City chose not to file that motion. ARJN at 4-5. The City's consistent refusal to address these issues below precludes their review here.

individuals in Los Angeles than the number of available beds [in shelters]," Los Angeles cannot punish homeless individuals "for involuntarily sitting, lying, and sleeping in public"), *vacated on other grounds*, 505 F.3d 1006 (9th Cir. 2007).

Following *Martin*, district courts throughout this Circuit have adopted Eighth Amendment injunctions with precisely the same language as the district court used here. *See, e.g, Warren v. City of Chico*, No. 21-cv-00640, 2021 WL 2894648, at *2 (E.D. Cal. July 8, 2021) ("this Circuit has previously held that ordinances such as this are not enforceable, *unless there is enough practically available shelter within the City for all unhoused individuals*"); *Fund for Empowerment v. City of Phoenix*, No. 22-cv-02041, 2022 WL 18213522, at *9 (D. Ariz. Dec. 16, 2022) (enjoining "Camping and Sleeping Bans against individuals who practically cannot obtain shelter *as long as there are more unsheltered individuals in Phoenix than there are shelter beds available*").

In *Johnson*, the Ninth Circuit expressly affirmed *Martin*'s central holding. 50 F.4th at 795 ("The formula established in *Martin* is that the government cannot prosecute homeless people for sleeping in public if there is a greater number of homeless individuals in [a jurisdiction] than the number of available shelter spaces." (internal quotations omitted)); *see id.* at 796 (noting that the district court had granted an injunction in *Johnson* because "[t]he record is undisputed that Grants Pass has far

28

more homeless individuals than it has practically available shelter beds"). The district court's order applied the holdings of this Court exactly.

The City asserts that the injunction is overbroad because it would preclude the City from punishing even unhoused people who do have access to shelter as long as the City's overall shelter shortage persists. Br. at 31 n.12, 32. That is not what the district court's order states. The preliminary injunction *only* precludes the City from enforcing anti-homelessness laws against "involuntarily homeless" people. 1-ER-0049. The injunction therefore *permits* the City to enforce its anti-homelessness ordinances—despite its obviously massive shelter shortage—if an individual is *not* "involuntarily homeless" because that person has voluntary, practical access to adequate housing or shelter prior to enforcement. *See Martin*, 920 F.3d at 618 (enforcement only impermissible whenever shelter is not "practically available").

The district court's order is deliberately limited in scope. The district court adopted the exact language most recently endorsed by this Court in *Johnson. See* 50 F.4th at 813 (noting that the injunction only precludes enforcement operations against "involuntarily homeless person[s]"); *see id.* at 792 n.2 ("Persons are involuntarily homeless if they do not have access to adequate temporary shelter . . . because it is [not] realistically available to them" (internal quotations and citations omitted)). Thus, the City's assertions that the preliminary injunction is overbroad are baseless.

The City mischaracterizes the district court's preliminary injunction as overbroad in light of this Court's partial remand in *Johnson*. *See* Br. at 34. But this Court only remanded in *Johnson* because the original order precluded additional ordinances that "may be enforced against Plaintiffs who engage in prohibited activity *unrelated to their status as homeless persons*." *See* 50 F.4th at 812 n.36. By contrast here, the district court's injunction only bars enforcement of ordinances that punish the mere status of being homeless. 1-ER-0049 ("The Enforcement Bulletin identifies several laws and ordinances that the court does not include in the injunction because Plaintiffs correctly did not seek their inclusion since they are directed at conduct beyond sitting, lying or sleeping outside").

The City cannot show the injunction is overbroad because the district court followed this Court's instructions regarding the scope of the injunction to the letter. As such, there is no abuse of discretion for this Court to review.

3.  The City's Argument as to Individual or Collective Eighth Amendment Rights is Irrelevant.

The City now reargues a position raised for the first time at the hearing on preliminary injunction—that the Eighth Amendment is an individual, not a collective, right. Br. at 31-36; 1-ER-0042. It argues that involuntary homelessness must be evaluated on an individualized, person-by-person basis, to determine whether enforcement is appropriate. *Id.*

30

The City's argument is misplaced because the district court's order allows for this individualized assessment; the injunction protects only *individuals* who are "involuntarily homeless." 1-ER-0049. The City's distinction simply has no impact on the appropriate scope of the district court's injunction. Nor does the injunction's limitation that it is only effective as long as there is a shelter shortage lend any support to the City's position. Br. at 32-33. In fact, this restriction further limits the preliminary injunction, providing conditions under which the City is allowed to enforce its laws without requiring a determination of whether an individual is involuntarily homeless.

It is also both logical and the law of this Circuit that an overall lack of shelter informs whether individuals have access to shelter or housing. This Court has held that the primary evidence of "involuntary homelessness" is a massive shortage of available shelter. *See Johnson*, 50 F.4th at 792 ("[T]he number of homeless persons outnumber the available shelter beds. ***In other words,*** homeless persons have nowhere to shelter and sleep in the City other than on the streets or in parks."); *see also Martin*, 920 F.3d at 604, 617; *Jones*, 444 F.3d at 1138. Thus, when considering Plaintiffs' likelihood of success, the district court properly considered whether the overall dearth of shelter supports a finding that individual homeless San Franciscans lack adequate shelter. But this does not mean that the district court defined "involuntarily homeless" on a collective basis for purposes of the injunction.

The City mistakenly relies on the district court's injunction in *Fund for Empowerment* to support its position. Br. at 34; *see also* 3-ER-0386-87. The District of Arizona expressly rejected the argument that Phoenix's "individualized assessments" "preclude[d] the need for a broad injunction." *Fund for Empowerment*, 2022 WL 18213522, at *3. Rather, the court relied on an aggregate shelter bed shortage as evidence that any unsheltered individual within the jurisdiction is involuntarily homeless because they have no "practical recourse to housing." *Id*. at *4, *7 ("[T]here is not enough shelter space for every unsheltered person to choose whether to sleep or camp outside. ***Thus,*** any enforcement of the Camping and Sleeping Bans against individuals who practically cannot obtain shelter effectively criminalizes homelessness"). As a result, *Fund for Empowerment*'s preliminary injunction enjoined enforcement "against individuals who practically cannot obtain shelter as long as there are more unsheltered individuals in Phoenix than there are shelter beds available." *Id.* at *9.

This Court and *Fund for Empowerment* have provided for precisely the same scope of relief as the district court here. *See also Warren*, 2021 WL 2894648, at *2. Regardless, the preliminary injunction recognizes that enforcement would be permissible against individuals who are voluntarily homeless, if any. Thus, the aggregate versus individualized question the City raises is irrelevant. The preliminary injunction allows the City to ask if an individual has shelter and enforce

if that person does, so there is no issue to review on appeal. The City is merely in denial that its unhoused residents have no practical access to shelter, a result of its own making.

### 4. The City Cannot Show Clear Error in the Detailed Factual Record Supporting the Injunction.

The City's real problem on appeal is a definitive factual finding that the district court made below, not a genuine legal question as to the scope of the injunction. 1-ER-0042 ("The court need not decide whether Defendants' reading of *Martin* and *Johnson* is correct, *because their position lacks factual support*."). Effectively, the City is renewing its unsupported claim that the City only subjects unhoused individuals to criminal enforcement at HSOC enforcement operations after they have been given a real, voluntary offer of appropriate shelter such that they are no longer "involuntarily homeless." Br. at 34-36.

But the district court already determined that there is little to no factual basis for these assertions—and that in fact the opposite is true based on the overwhelming and largely uncontested record. ARJN at 6 ("in granting the preliminary injunction, the court made factual findings that undercut Defendants' position"); 1-ER-0038-39 ("Plaintiffs' key evidence is largely unchallenged."); 1-ER-0039-40 ("Defendants do not meaningfully rebut evidence that San Francisco initiates encampment closures without actually knowing whether any shelter beds will be available to

encampment residents, and that the closure proceeds anyway. . . . Plaintiffs submit ample evidence that encampment closures have been carried out even when [city] representatives said there was no available bed space"); 1-ER-0041-42 ("the fact that three people once received offers of shelter does little to cut into the large body of evidence demonstrating that shelter offers are often not made"); 1-ER-0018 (recounting "threats of citation or arrest by SFPD officers even when the individual was not offered shelter"); 1-ER-0040 ("Plaintiffs also offer evidence that closures took place without offers of bed space"); 1-ER-0043 ("the parties agree that at this time, a homeless San Franciscan who wants a shelter bed has no avenue to ask for one, much less get one"); 1-ER-0005 ("San Francisco does not have enough available shelter beds"); 1-ER-0026-27 ("the only clear way to access shelter is via an encampment resolution while under threat from law enforcement"); ARJN at 7 (same). The district court found that even the City's own evidence demonstrated that it proceeds with enforcement operations knowing that it does not have shelter for the vast majority of individuals present, in violation of its own policies. 1-ER-0028 n.1.

The City does not challenge these robust, well-supported findings on appeal—in fact, the City ignores them entirely. Br. at 34-36. The appellate court may not reverse such findings of fact, "even if it is convinced it would have found differently," if the district court's findings "are plausible in light of the record viewed

in its entirety." *Husain v. Olympic Airways*, 316 F.3d 829, 835 (9th Cir. 2002)*, Lentini v. Cal. Center for the Arts, Escondido*, 370 F.3d 837, 843 (9th Cir. 2004) (clear error standard is "significantly deferential").

The City instead recites "facts" the district court already carefully considered and rejected or found irrelevant. Br. at 11-18; 1-ER-0011-12. The district court found the City's HSOC operations unlawful based on detailed evidence showing that unhoused individuals who have no access to shelter are regularly threatened with citation and arrest. 1-ER-0039-40. The City provides no legitimate basis for this Court to upend the already narrow scope of the district court's injunction.

Instead of asserting that there was an error in the factual findings, the City attempts to blame others for its own decision not to present more evidence in support of its opposition. Br. at 22-23. Faced with an uncontroverted record, the City implausibly suggests that the district court's discovery and routine evidentiary decisions amount to abuse of discretion. Br. at 34-36.

First, this Court does not review such routine administrative issues on interlocutory appeal. The City's complaint about the timing of the district court's discovery order regarding the City's available enforcement data—which the City never provided—is not reviewable. *See Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 825 (9th Cir. 2018).

Attempting to deflect blame for its own failure to present probative evidence, the City complains that the district court limited its ability to respond with rebuttal data by requiring it be produced to Plaintiffs. Br. at 22-23. But the district court only required the City to produce individualized data that it wanted to rely upon to counter any individual or aggregate evidence offered by Plaintiffs. 6-ER-1450-52. If the City wanted to use that data, it was only required to provide it to Plaintiffs to give them an opportunity to analyze and respond on reply. The City made the conscious choice not to do so. The City should not be permitted now to use that strategic decision as both sword and shield by claiming that the withheld data would have rebutted Plaintiffs' evidence while also giving Plaintiffs no opportunity to review that information and respond to it. The district court also twice extended the City's deadline to file an opposition, giving seven weeks to gather and submit evidence. 7-ER-1504-05.

Second, the City seeks to excuse its failure to challenge the record by suggesting that the government is not required to make *any* showing that unhoused individuals have access to shelter prior to enforcement. Br. at 34. This assertion fundamentally misunderstands *Martin*. *See Johnson*, 50 F.4th at 813 n.31 ("*Martin* did not hold homeless persons bear the burden of demonstrating they are involuntarily homeless"); *see also Fund for Empowerment*, 2022 WL 18213522, at

36

*3 ("the City has appropriately conceded that it bears the burden of confirming that shelter space is not practically available").

Regardless, Plaintiffs—both the individuals and members of the Coalition on Homelessness—*did* show that they are involuntarily homeless and that they have been subjected to citation, arrest, and repeated threats of enforcement in the absence of available shelter. 7-ER-1726; 7-ER-1728; 7-ER-1675; 7-ER-1683; 7-ER-1703-04; 7-ER-1712 ("The police officers from the [neighborhood] beat also regularly told me that they would arrest me if I did not move"); 7-ER-1714 (describing a citation received by Plaintiff Toro Castaño); 8-ER-1756-57 (describing two citations received by Plaintiff Coalition on Homelessness member Todd Bryant).

Plaintiffs also presented aggregate data regarding the City's widespread practices. 1-ER-0049 ("Plaintiffs present[ed] uncontradicted evidence that from July 2018 to October 2021, SFPD cited or arrested homeless individuals at least 2,952 times for lodging without permission or for refusing to obey a law enforcement order to vacate or 'move along' [and that] analysis of the same public records from 2022 shows the same trends."); 1-ER-0039 ("What is at issue is the body of detailed evidence demonstrating significant failures to comply with [the City's] policy"); 1-ER-0037-38 ("San Francisco does not have adequate available shelter for its homeless residents, falling short by thousands of beds. . . . [Yet] SFPD continues to cite, arrest, and force homeless individuals to vacate encampments and 'move along'

37

under threat of enforcement.").  By contrast, the City introduced no evidence that it only enforces its laws against those who are "choosing" to be homeless.  *See* 1-ER-0043; 3-ER-380-81 ("[T]here was nothing that was offered by the defense to challenge Dr. Herring's analyses in any sort of quantitative way or to present an alternate analysis").

Under these circumstances, this Court has made clear that an Eighth Amendment injunction is appropriate—regardless of which party bears the burden in these cases.  *Johnson*, 50 F.4th at 812 (noting "the complete absence of evidence that Plaintiffs are voluntarily homeless" and therefore "the anti-camping ordinances are unconstitutional as applied to them").  The City offers this Court no reason to conclude that the district court's findings of fact are clear error, and offers no basis to limit the scope of the court's narrowly tailored injunction.  Given that the City has not challenged the district court's factual findings or analysis of the preliminary injunction factors, reversal or remand of the district court's decision would be inappropriate.

## C.    The District Court's Eighth Amendment Injunction Is Not Vague and Needs No Clarification

### 1.    The Order is Clear and the City Cannot Meet this Court's Exacting Standard for Vagueness.

The City labels "vague" terms in the district court's injunction that are abundantly clear.  Br. at 47-54.  The standard of review for vagueness requires that

an injunction be "*so vague* that [it] has *no reasonably specific meaning*." *See Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1087 (9th Cir. 2004). This is a high bar the City cannot meet given the clarity of the terms at issue.

First, the term "involuntarily homeless" in the district court's injunction has already been precisely defined by this Court—eliminating any room for ambiguity. *See Johnson*, 50 F.4th at 792 n.2 ("Persons are involuntarily homeless if they do not have access to adequate temporary shelter, whether because they have [no] means to pay for it or because it is [not] realistically available to them for free." (internal quotations and citations omitted)). It is clear that the injunction prohibits enforcement of ordinances that punish individuals who have no "practically available" shelter prior to enforcement. *Martin*, 920 F.3d at 618. The district court's reliance on this Court's definition provides "fair and precisely drawn notice of what the injunction actually prohibits," and cannot possibly be considered "so vague that [it] has no reasonably specific meaning." *See Fortyune,* 364 F.3d at 1087. The City's new police bulletin also provides specific guidance on how to comply with the district court's order, demonstrating that the City understands the full scope of the injunction and has had no difficulty instructing its employees on its meaning. *See* Appeal Dkt. No. 13 at 113-16.

The amicus brief of the UC College of the Law, San Francisco in support of the City also demonstrates that the order's definition of "involuntarily homeless" is

39

clear. UC College of the Law, Amicus Br., at 5 ("the City may enforce any laws regarding removal of tents, encamping materials, and related personal property belonging to those who are voluntarily homeless without violating Judge Ryu's Order or this Court's holding in *Martin* and *Johnson*"). The City's other amicus, League of Cities, also cites this Court's clear definition of the term. League of Cities, Amicus Br., at 11-12 n.5 ("This Circuit has said that persons are involuntarily homeless 'if they do not have access to temporary shelter, whether because they have the means to pay for it or because it is realistically available to them for free.").

Despite having clear answers, the City disingenuously poses intentionally misleading "questions" regarding this definition. Br. at 51. Under this Court's definition, an individual with designated, accessible shelter is not involuntarily homeless. The district court found that the City does not make bona fide shelter offers to unsheltered individuals prior to enforcement, so they are involuntarily homeless when the City forcibly displaces them. 1-ER-0039-41.[5]

The City's improper administrative motion is also irrelevant to this appeal. *See* Br. at 48-49. The district court acted well within its discretion to deny the City's

---

[5] *Martin* quintessentially precludes criminal enforcement before shelter is practically available. Municipalities cannot play a shell game with shelter by keeping specific beds vacant as a pretext to enforce anti-homeless laws despite an at-capacity shelter system that no person can access. *See* 7-ER-1583-84. The City's appeal does not contest these points that Plaintiffs raised below.

administrative motion for clarification; it correctly determined that the City's motion sought substantive, rather than administrative relief, violating the district court's rules. 2-ER-0093; 2-ER-0076; ARJN at 4. Regardless, this Court does not review or consider administrative motions as part of an interlocutory appeal. *In re Lorillard Tobacco Co.*, 370 F.3d 982, 986-87 (9th Cir. 2004).

Plaintiffs also explicitly requested relief enjoining the City from "threaten[ing] to enforce" certain ordinances against unhoused individuals. *See* 10-ER-2526-29. The district court considered clear evidence that the City issues thousands of "move along" orders under threat of citation or arrest. 1-ER-0038. Until now, the City never raised any argument that an injunction prohibiting a "threat to enforce" is unclear. Br. at 52-54; 3-ER-0385-86 (recognizing the City waived this argument because "not a single word of the City's opposition brief was devoted to that topic").

Even if the argument was not waived, the injunction's prohibition on "threaten[ing] to enforce" fully satisfies Rule 65(d)'s specificity requirements. *See Fortyune*, 364 F.3d at 1087. Injunctions are sufficiently definite and valid even if they "decline to provide . . . explicit instructions on the appropriate means to accomplish its directive." *Hull v. Little*, No. 21-56252, 2022 WL 17818065, at *1 (9th Cir. Dec. 20, 2022).

41

The City's complaint that the term "threaten to enforce" is "too vague to be reasonably understood" is unfounded.  Br. at 53.  SFPD has already promulgated a notice providing specific guidance as to the meaning of "threaten to enforce" in the injunction.  Appeal Dkt. No. 13 at 113 ("The injunction's use of the word 'threat' should be interpreted as any statement of an intention regarding the possibility of enforcement and should not rise to the level of a criminal threat under Penal Code 422.").  The district court's injunction is also consistent with well-established law in this Circuit regarding threats to enforce.  As this Court recognized, "imposing a few extra steps before criminalizing the very acts *Martin* explicitly says cannot be criminalized does not cure the . . . Eighth Amendment infirmity." *Johnson*, 50 F.4th at 808.

In civil rights cases involving statutory and constitutional violations by other municipalities and police departments, injunctions prohibiting threats to enforce certain laws are commonplace.  *See, e.g.*, *Justin v. City of Los Angeles*, No. 00-cv-12352, 2000 WL 1808426, at *13 (C.D. Cal. Dec. 5, 2000) (enjoining the City of Los Angeles from "demanding production of identification on threat of arrest"); *Kohr v. City of Houston*, No. 17-cv-01473, 2017 WL 3605238, at *3 (S.D. Tex. Aug. 22, 2017) (enjoining City of Houston from enforcing city ordinance prohibiting encampment, including by "written or verbal threats to cite or arrest"); *Cobine v. City of Eureka*, 250 F. Supp. 3d 423, 428, 432 (N.D. Cal. 2017) (denying motion to

dismiss Eighth Amendment claim where "Notice to Vacate" threatened that homeless individuals would be prosecuted for refusing to leave the area); *Phillips v. City of Cincinnati*, 479 F. Supp. 3d 611, 654-56 (S.D. Oh. 2020) (holding Eighth Amendment claim proper where "Plaintiffs alleg[ing] they do not have access to permanent shelter" were "forced to move multiple times under threat of arrest by police").

The City's only two legal authorities regarding the ambiguity of "threat" injunctions are inapposite and from beyond this Circuit. Commands to follow the law and nebulous and undefined "threats" are not equivalent to the district court's well-delimited order for the City not to "threaten to enforce" a *specific* set of ordinances during law enforcement interactions. Br. at 52-53. In context, the term provides "fair and precisely drawn notice of what the injunction actually prohibits." *See Fortyune*, 364 F.3d at 1087.

> 2. This Court Has Addressed the City's False Alarmism Regarding the Scope of the District Court's Injunction.

The City incorrectly claims that the injunction is unconstitutional because it prevents the City from fully exercising its authority to respond to homelessness and protect public health, safety, and the accessible right-of-way. Br. at 37-38. In fact, the district court's injunction listed the specific health, safety, and accessibility ordinances the City purports to be concerned with and notes that they were *not enjoined* because they do not criminalize the mere status of being homelessness. 1-

ER-0049 n.19; ARJN at 9.  The City's own amici, UC College of Law, also dismisses the City's alleged concerns that it is powerless to address the homelessness crisis under the injunction.  UC College of the Law, San Francisco, Amicus Br., at 6-7 (injunction in no way impacts the City's ability to "keep public spaces clean and sanitary" and "allow safe access" to sidewalks).  The UC College of Law noted various ways the City can continue to properly help individuals exit homelessness without criminalizing them.  *Id.* at 7 n.5.

The City's own bulletin recognizes that SFPD may continue to enforce these health and safety laws under the injunction.  Appeal Dkt. No. 13 at 113-116.  The SFPD guidance also confirms that the City has other tools at its disposal to protect public safety, remove hazardous property, and secure and clean streets and sidewalks without the need for enforcement—including by requesting that individuals move voluntarily and temporarily for cleanings.  *Id.*  Thus, the City can still enforce public right-of-way and protect public health without violating Eighth Amendment rights. *Blake v. City of Grants Pass*, No. 18-cv-01823, 2020 WL 4209227, at *15 (D. Or. July 22, 2020) ("Grants Pass would retain a large toolbox for regulating public space without violating the Eight Amendment"), *aff'd sub nom. Johnson v. City of Grants Pass*, 50 F.4th 787.  This is far from the "impossible situation" the City proclaims. Br. at 1.

44

The City's invocation of federalism concerns is thus misplaced. Br. at 46. The City's discretion over municipal policy does not trump the constitutional rights of its unhoused residents. *Martin* clearly established that the Constitution prohibits states' criminalization of involuntary homelessness. *Martin*, 920 F.3d at 613; *see also Arizona Dream Act Coalition*, 757 F.3d at 1069.

The City's "overview of San Francisco's homelessness response system" in its Statement of the Case is irrelevant. Br. at 6-11. That the City may have other programs intended to address homelessness does not negate the City's unconstitutional conduct here. Plaintiffs only challenge San Francisco's specific practice of criminalizing homelessness in the absence of available shelter. 1-ER-0048. The City never explains how perpetually displacing unhoused people and punishing them simply because they are unhoused contributes to the City's stated goals of offering shelter, housing, and other services that actually address the homelessness crisis. Regardless, the City's fear-mongering about the dire consequences of not displacing unhoused people finds no support in the record. *See Johnson*, 50 F.4th at 812 n.35 ("There are no facts in the record to establish that *Martin* has generated 'dire' consequences for the City. Our review of this case is governed only by the evidence contained in the record."). Rather, criminalization deepens the homelessness crisis. 11-ER-2602-05; 11-ER-2561-63; 7-ER-1623-28.

3. The City's "Workability" Arguments are Waived and Unfounded.

Unable to argue against the clear terms and scope of the district court's order, the City argues that the order is unworkable. But the City never argued below that *Martin*'s formula was administratively "unworkable," thus waiving the argument. *A-1 Ambulance Serv., Inc.*, 90 F.3d at 338; *see* 3-ER-0378; 3-ER-0386-87; 3-ER-0400-01. In any event, these arguments are unavailing.

The City claims it has to know the exact number of unhoused individuals at all times to comply with the injunction and maintains that such a calculus is impossible. Br. at 44-47. Yet the City points to both *Martin* and *Johnson* for support, where this Court applied the very same metric for assessing street homelessness that the City now suggests is unworkable. *Blake*, 2020 WL 4209227, at *2; *see also Martin*, 920 F.3d at 604 n.1.

The City's objection is also irrelevant. The injunction does not "require" exacting precision as to the numbers of shelter beds and unhoused individuals. Br. at 44-45. The record establishes that the City is generally aware of its daily shelter shortages and communicates those reports across its various agencies. *See* 1-ER-0013 ("There is a daily meeting at 9:30 am 'where HSOC can confirm its allocations with HSH placement and request additional or specific allocations'"). That information alone allows the City to determine the extent of the shelter shortage and

whether enforcement of anti-homelessness ordinances is permissible under the district court's order.[6]

The City's renewed invocation of the "public right of way" and "wheelchair-bound pedestrians" as part of the supposed unworkability of the injunction is also misleading, as the injunction does not preclude enforcement to ensure accessible sidewalks. Br. at 47; 1-ER-0048 ("The relief sought by Plaintiffs will not bar Defendants' efforts to 'keep public spaces clean and sanitary' or 'allow safe access' to sidewalks and rights-of-way since Plaintiffs do not ask the court to enjoin any ordinances targeting public health nuisances or willfully obstructing streets, sidewalks, or other passageways"). Nor can the City's asserted challenges with implementation override the constitutional rights of thousands of unsheltered San Franciscans the district court's injunction protects. *See*, *e.g.*, *Arizona Dream Act Coalition*, 757 F.3d at 1069.

### D. The City's Other Scope of Enforcement Arguments Are Waived and Meritless

####    1.    No Scope of Enforcement Arguments Were Preserved.

---

[6] The point is also largely academic. The district court found that the City has an "indisputably insufficient stock of shelter beds . . . falling short by thousands of beds." 1-ER-0037-38. Knowing the exact magnitude of the shortfall in shelter availability is irrelevant since the shelter system is so far from being able to accommodate the homeless population. If there is a genuine change in these factual conditions, the City can also modify or dissolve the injunction at that juncture.

47

The City raises various other new arguments regarding the scope of its enforcement authority, exemplifying why this Court does not entertain unpreserved arguments presented for the first time on appeal. These arguments raise mixed questions of law and fact entirely dependent on factual findings the City did not develop in the district court. By failing to argue these issues, the City avoided factual rebuttal, and now asks this Court to assume purely hypothetical facts despite no support in the record. *See* ARJN at 8. For this reason, the Court does not entertain these kinds of arguments for the first time on appeal. *See*, *e.g.*, *A-1 Ambulance Serv., Inc.*, 90 F.3d at 338 ("we lack the power to consider" an issue not raised below unless the issue "is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed"); *Gieg*, 407 F.3d at 1046 n. 10 ("An appellate court will not consider arguments not first raised before the district court unless there are exceptional circumstances."); *see also United Nurses Ass'ns of California v. Nat'l Labor Rels. Bd.*, 871 F.3d 767, 780 (9th Cir. 2017) ("This perfunctory argument is inadequately briefed and therefore waived.").

Indeed, the record shows that the City routinely fails to follow its own policies—so it is particularly unfair for the City to raise these waived and unsupported arguments here. 1-ER-0039 ("Defendants' policy is not at issue. . . . What is at issue is the body of detailed evidence demonstrating significant failures

to comply with the policy"); 7-ER-1575; 7-ER-1577. None of these arguments justify further limitations on the district court's already narrowly tailored order.

2.    There Is No Geographic Safe Harbor Against Criminal Enforcement Anywhere in the City.

For the first time, the City purports that it only seeks to criminally enforce against unhoused people in specific geographic areas during formal HSOC encampment resolutions encompassing "a few City blocks," arguing that therefore the district court's injunction is overbroad. Br. at 36-40. The argument is not preserved for appeal. *A-1 Ambulance Serv., Inc.*, 90 F.3d at 338. Regardless, this assertion has no support in the record. There is no safe harbor in law or fact from criminal enforcement anywhere within San Francisco. *Warren*, 2021 WL 2894648, at *3 n.3 (holding any safe harbor should be codified by law).

The record makes clear that homeless individuals are threatened with criminal enforcement across the entire City—indiscriminate of location—on a daily basis. *See* 1-ER-0025. HSOC encampment resolutions take place all over the City. 10-ER-2465-73. And it is uncontested that San Francisco dispatches police thousands of times each year to respond to complaints about homelessness *at any location*— and that the vast majority of those interactions result in orders to relocate under threat of citation and arrest, without an offer of shelter. 1-ER-0024-26; 7-ER-1572-73; 7-ER-1574; 7-ER-1614-16. The City does not contest that police have made thousands of citations and arrests for sleeping or lodging in public across the entire City in

recent years—regardless of whether an HSOC operation took place at that location. 1-ER-0039; 1-ER-0025-26; 1-ER-0040; 5-ER-1024.  Declarants before the district court also attested to criminal enforcement occurring at all hours and locations.  3-ER-0553; 7-ER-1530; 7-ER-1698; 7-ER-1712; 8-ER-1757; 8-ER-1763; 8-ER-1798-99; 8-ER-1813.

Plaintiffs and declarants confirm they are never able to escape the City's enforcement dragnet.  Several noted that the City has never informed them where they can lawfully be without risk of enforcement. *See*, *e.g.*, 7-ER-1698 ("They asked about several other places to move and were told each time that they could not move there either"); 8-ER-1757 ("I had been asked to move by City workers four times that day already"); 3-ER-0553 ("The police watched as we moved our belongings across the street . . . .  As soon as we did so, though, the police came over and said we had to move elsewhere, or they would arrest us").

Plaintiffs briefed this issue below and the City declined to rebut it, or even mention it, in their opposition.  *See* 7-ER-1582 ("SFPD has cited, arrested, and forced unhoused individuals to "move along" under threat of citation and arrest . . . *with no safe harbor anywhere within the City*"); 5-ER-0969 ("as Plaintiffs have shown, and Defendants do not rebut, there is 'no safe harbor for unhoused individuals anywhere within the City'").

50

The City's cited authorities are readily distinguishable on the facts. *See* Br. at 39-40. In *Shipp v. Schaaf*, there was no evidence that the government ever issued citations or arrests against unhoused individuals, and the district court was therefore unconcerned by the *temporary* closure of one homeless encampment where individuals were free to sleep anywhere else in the jurisdiction without fear of citation or arrest. 379 F. Supp. 3d 1033, 1037 (N.D. Cal. 2019); *see also Gomes v. Cnty. of Kauai*, 481 F. Supp. 3d 1104, 1109 (D. Haw. 2020) (ordinance only criminalized sleeping in parks, and all other public areas were available without threat of enforcement); *Carlos-Kahalekomo v. Cnty. of Kauai*, No. 20-cv-00320, 2020 WL 4455101, at *3 (D. Haw. Aug. 3, 2020) (same); *Fitzpatrick v. Little*, No. 22-cv-00162, 2023 WL 129815, at *5 (D. Idaho Jan. 9, 2023) (same); *Frank v. City of St. Louis*, 458 F. Supp. 3d 1090, 1094 (E.D. Mo. 2020) (unhoused people precluded from sleeping only in certain areas). By contrast, the enjoined laws here have no safe harbor provisions, and the record establishes that Plaintiffs have "nowhere else" to shelter to avoid criminal punishment for being unsheltered. *See* Br. at 39; *Johnson*, 50 F.4th at 813.

Functionally, the City asks this Court to nullify the district court's injunction by authorizing criminal enforcement at all planned HSOC encampment resolutions. Br. at 37-38. This would entirely ignore the district court's clear factual findings that the City's HSOC operations are criminal enforcement operations against

unhoused individuals who rarely receive notice, who have no access to shelter anywhere in the City prior to enforcement, who are not offered shelter, even belatedly, and who have nowhere else they can lawfully be without being subject to enforcement and harassment. 1-ER-0039-40; 1-ER-0042.

The City does not challenge these factual findings, providing no basis for such a dramatic exception to the injunction. This record provides no basis for this Court to permit the ongoing forced displacement of unhoused individuals from block to block throughout the day under threat of criminal enforcement absent meaningful access to shelter, when unhoused individuals have no protection against enforcement anywhere in the City.

    3.    There is No Temporal Safe Harbor Against Criminal
          Enforcement in the City.

Similarly, the City's attempts to eliminate Section 168 from the district court's injunction fail. Again, the City did not raise the issue below and it is not appropriate on appeal. *A-1 Ambulance Serv., Inc.*, 90 F.3d at 338. Regardless, the City's "time restriction" argument is incorrect as a matter of fact and law.

The factual record is clear that unhoused people are cited, arrested, and threatened with citation and arrest for sleeping or lying down in public places at all times of day and night—both at formal HSOC operations and at ordinary daily police enforcement interactions and dispatches. *See*, *e.g.*, 8-ER-1798 ("The harassment occurred no matter the time of day. As late at night as around 1:00am, and as early

52

in the morning as around 4:00am"). The City does not rebut this record that, in practice, there is no time restriction on enforcement. The City ignores that the district court's order enjoins a specific group of statutes and ordinances that the City has collectively used to punish unhoused San Francisco residents at all times and in all places. 1-ER-0008-09; 1-ER-0049; 11-ER-2560; 8-ER-2027-31.

More importantly, if Section 168 were struck from the district court's injunction—unhoused individuals would be subject to enforcement almost all day. The City highlights that the restrictions in Section 168 only apply from 7AM to 11PM on sidewalks, suggesting unhoused individuals should simply reside in public parks during those times. Br. at 42-43. But the City ignores that the Park Code, which was not enjoined, precludes unhoused people from residing there from 8PM to 8AM. *See* Br. at 43 n.13; S.F., Cal., Park Code § 3.13. If both ordinances remain in effect, then unhoused people would not be allowed to sit or sleep *anywhere* in the City for at least four hours every day. So if the district court's injunction were lifted as to Section 168, unhoused individuals would be forced to roam the City for hours each day to avoid criminal punishment. *See*, *e.g.*, 7-ER-1681 ("literally hundreds of people were shuffling between our streets and public parks with everything they owned—every single day"). This is exactly the kind of prohibition *Martin* forbids. *See*, *e.g.*, *Warren*, 2021 WL 2894648, at *2 (multiple anti-camping ordinances are unlawful if together they effectively required that "the person walked 24 hours a

53

day" to avoid enforcement). Thus, the district court's injunction as to Section 168, never challenged below, must stand.

> 4.  Police Code Section 169 Must Remain Enjoined as It Criminalizes Homelessness.

This Court established in *Johnson* that the government is prohibited from criminalizing "rudimentary precautions" a homeless person might take against the elements in the absence of available shelter. *Johnson*, 50 F.4th at 809. On its face, Section 169 prohibits the survival belongings this Court identified as within the scope of protection. *See* Br. at 41 (quoting Section 169's definition of a prohibited encampment as "*any structure* consisting of *any material* with . . . *any other upper covering* or that is otherwise enclosed by sides that is of sufficient size for a person to fit underneath or inside while sitting or lying down").

Nonetheless, the City argues for the first time on appeal that the district court erred in enjoining enforcement of Section 169. The City bases its argument on an erroneous reading of *Johnson*, purporting that this Court has held that unhoused individuals without shelter can be criminally punished for possessing a tent. Br. at 41. No such conclusion has ever been reached by this Court.

Rather, the Court in *Johnson* noted that determining whether "fire, stove, and structure prohibitions" deprive homeless persons of "rudimentary precautions" is a highly factual, record-based inquiry that had not been presented. *Johnson*, 50 F.4th at 812. Indeed, the question of whether an ordinance prohibiting the use of tents was

54

enforceable under the Eighth Amendment was not before the district court in *Johnson*. *See Blake*, 2020 WL 4209227. Regardless, Section 169 does not simply ban tents. It bans *all manner* of protective coverings that an unhoused individual may use to shield or cover themselves from the elements.

The City also overlooks that Section 169 is only enforceable against unhoused individuals if they have been given a bona fide offer of shelter in advance of enforcement. 8-ER-2030. The district court's factual findings confirm that the City criminally punishes unhoused individuals, including for having any protective coverings or belongings, without making offers of shelter as required by the Eighth Amendment and Section 169 itself. 1-ER-0008; 1-ER-0028; 1-ER-0029-30; 1-ER-0049-50; 7-ER-1704; 8-ER-1747 ("I have seen homeless individuals cited or ticketed for refusing to pack up and leave"); 8-ER-1756 ("SFPD officer informed me I had twenty minutes to move all of my [] belongings that were at the site, or else he was going to arrest me"); 8-ER-1794 ("Nor have I ever received an offer of shelter or services from the City before City workers have seized and disposed of all of my survival belongings").

Given the district court's finding that the City does not comply with either the Constitution or its own policy, allowing enforcement of Section 169 would entirely defeat the purpose of the district court's injunction. 1-ER-0039-41. It would also deprive unhoused people of the "rudimentary precautions" proscribed by that

55

ordinance, in violation of *Johnson*. The district court's injunction as to Section 169 must stand.

### E. The City's Amici Raise Unpersuasive Arguments This Court Need Not Consider

The League of California Cities as amicus curiae—like the City—raises arguments in this Court that were never argued to the district court. Nor did the City present these argument in its opening brief, so they should not be considered here. *Artichoke Joe's Cal. Grand Casino v. Norton*, 353 F.3d 712, 719 n.10 (9th Cir. 2003) ("In the absence of exceptional circumstances . . . we do not address issues raised only in an amicus brief"); *Russian River Watershed Protection Comm. v. City of Santa Rosa*, 142 F.3d 1136, 1141 (9th Cir. 1998) (same); *Friends of Yosemite Valley v. Kempthorne*, 520 F.3d 1024, 1033 (9th Cir. 2008) ("Arguments not raised by a party in its opening brief are deemed waived").

Regardless, the League misstates this Court's precedent with respect to the appropriate scope of injunctive relief. Citywide injunctions are appropriate whenever they are necessary to provide complete relief to the plaintiffs—class action or not. *See Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1502 (9th Cir. 1996) ("fourteen named plaintiffs in this case . . . would not receive the complete relief to which they are entitled without statewide application of the injunction"); *Bresgal v. Brock*, 843 F.2d 1163, 1170-71 (9th Cir. 1987) ("an injunction is not necessarily made over-broad by extending benefit or protection to persons other than

56

prevailing parties in the lawsuit—even if it is not a class action—*if such breadth is necessary to give prevailing parties the relief to which they are entitled*") (emphasis in original).

Citywide injunctions are particularly appropriate when law enforcement would otherwise subject individual plaintiffs and associational plaintiffs' members to unconstitutional enforcement indiscriminately. *See Easyriders*, 92 F.3d at 1502 ("it is unlikely that law enforcement officials . . . would inquire before citation into whether a motorcyclist was among the named plaintiffs or a member of [associational plaintiff]"). Courts in this Circuit have regularly issued citywide injunctions against unconstitutional treatment of unhoused individuals—including in *Martin*. *See*, *e.g.*, *Garcia v. City of Los Angeles*, 481 F. Supp. 3d 1031, 1042 (C. D. Cal. 2020), *aff'd*, 11 F.4th 1113 (9th Cir. 2021); *Warren*, 2021 WL 2894648, at *1; *Fund for Empowerment*, 2022 WL 18213522, at *9. The citywide preliminary injunction is also appropriate because the Coalition on Homelessness has hundreds of impacted members. 1-ER-0014-18; 11-ER-2541-43; 7-ER-1661-62.

The League is also incorrect that Plaintiffs did not argue that the City has a custom or practice of criminalizing involuntary homelessness sufficient to demonstrate *Monell* liability. 7-ER-1573-78; 7-ER-1584-86; 7-ER-1587-88; 5-ER-0966. The uncontested record before the district court contained years of detailed data about *hundreds* of the City's unconstitutional enforcement actions against

unhoused individuals, supported by direct eyewitness accounts from twenty-nine

impacted unhoused individuals, nine eyewitness monitors, and three former City

employees identifying *more than a hundred* unlawful law enforcement interactions.

The City did not rebut this evidence. 1-ER-0038-39 ("[The City] ignore[s]

Plaintiffs' considerable and direct observations of violations of [the City's] policies,

and do not provide a competing factual record from evidence within their control.").

This record far exceeds what *Monell* requires. *See, e.g.*, *Redman v. Cnty. of San

Diego*, 942 F.2d 1435, 1445-46 (9th Cir. 1991) ("the routine failure (or claimed

inability) to follow the general policy . . . constitutes a custom or policy; *Menotti v.

City of Seattle*, 409 F.3d 1113, 1148 (9th Cir. 2005) (widespread practice can be

inferred from four incidents); *Lawman v. City & Cnty. of San Francisco*, 159 F.

Supp. 3d 1130, 1144-45 (N.D. Cal. 2016) (sixty incidents over five years sufficient

to establish unconstitutional pattern despite written policy); *Cooper Levy v. City of

Miami*, No. 22-cv-21939, 2022 WL 17477009, at *4 (S.D. Fla. Dec. 6, 2022)

(allegations regarding four incidents of encampment property destruction sufficient

to plead municipal liability).

### F. The Preliminary Injunction Properly Requires Compliance with the City's Bag and Tag Policy

District courts have "broad discretion in fashioning a remedy." *Melendres v.

Arpaio*, 784 F.3d 1254, 1265 (9th Cir. 2015) (*citing Sharp v. Weston*, 233 F.3d 1166,

1173 (9th Cir. 2000)). This Court has also held that district courts have uniquely

broad discretion in remedying violations of the Constitution to provide even "relief that the Constitution would not of its own force initially require[.]" *Id.* at 1254; *Roman v. Wolf*, 977 F.3d 935, 942 (9th Cir. 2020) ("Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies") (*quoting Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)); *Stone v. City & County of San Francisco*, 968 F.2d 850, 861 (9th Cir. 1992) ("Federal courts possess whatever powers are necessary to remedy constitutional violations."). The district court's remedial powers are broadest in the context of a preliminary injunction where fundamental constitutional rights are at stake. *Roman*, 977 F.3d at 942 ("In time-sensitive circumstances, the district court's authority to issue broad equitable relief encompassed the authority to grant provisional relief to bring an ongoing violation to an immediate halt." (internal quotations and citations omitted)).

The City does not challenge the district court's exercise of discretion or the fact of the City's rampant destruction of unhoused individuals' property in violation of the Fourth Amendment. 1-ER-0043-46; Br. at 54-57. Instead, the City complains that the injunction unduly interferes with San Francisco's sovereign policy choices. Br. at 56-57. Though it has broad discretion, the district court limited itself to enjoining San Francisco from violating its own stated policies. As such, the order

minimally impacts the City's policy choices, and is more deferential to the City's policies than required. *See*, *e.g.*, *Women Prisoners of Dist. of Columbia Dept. of Corr. v. Dist. of Columbia*, 93 F.3d 910, 931 (D.C. Cir. 1996) (holding that "simply requir[ing] appellants to observe their own policies and procedures" does not "unduly intrude[] on appellants' local government functions"); *Hanna v. Peters*, No. 2:21-cv-00493-SB, 2022 WL 833165, at *6 (D. Or. Mar. 21, 2022) ("an order requiring Defendants merely to comply with their own [] policy is . . . not an inappropriate intrusion"); *Benjamin v. Fraser*, 156 F. Supp. 2d 333, 344 (S.D.N.Y. 2001) ("Requiring the Department to follow its own rules can hardly be either too broad or too intrusive").

To the extent the City complains that its Bag and Tag policy requires 72-hour notice to unhoused individuals before property removal, certain retrieval requirements, and trainings for staff—all of these City-endorsed requirements are precisely the kind of relief the district court is empowered to order to remedy the City's uncontested and extensive Fourth Amendment violations. *See Melendres*, 784 F.3d at 1266 ("district court did not abuse its discretion in ordering these corrective training and supervision procedures in order to redress the constitutional violations it found here").

The City also incorrectly argues that requiring compliance with its policy is merely an "obey the law" injunction. Br. at 56. First, the Ninth Circuit has "not

adopted a rule against 'obey the law' injunctions per se." *F.T.C. v. EDebitPay, LLC*, 695 F.3d 938, 944 (9th Cir. 2012). Second, an "obey the law" injunction is one that is "framed in language almost identical to the statutory mandate" and fails to "adequately describe the impermissible conduct." *See United States v. Miller*, 588 F.2d 1256, 1261 (9th Cir. 1978). Here, the injunction requires the City to comply with a detailed policy document that the City itself promulgated, which more than "adequately describe[s] the impermissible conduct" and is specific in terms. *See id.*

Critically, the City never previously objected to the use of its Bag and Tag policy as a guide to fashion injunctive relief. It can readily move to modify the order if it needs to alter the policy. But the City actually praised the policy as fully protecting constitutional rights. 5-ER-1029. At no time did it present the district court with any argument as to the scope of relief appropriate for Plaintiffs' Fourth Amendment claims. 1-ER-0049; 3-ER-0385-29. Thus, these arguments are also waived. *Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("[A] federal appellate court does not consider an issue not passed upon below"). As such, this Court should not disturb the district court's grant of tailored injunctive relief.

## VII.   CONCLUSION

For the foregoing reasons, the Court should affirm the district court's preliminary injunction order.

Dated:  April 4, 2023

By: *s/ Alfred C. Pfeiffer, Jr.*

LATHAM & WATKINS LLP
Alfred C. Pfeiffer, Jr., SBN 120965
505 Montgomery Street, Ste 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
al.pfeiffer@lw.com

LATHAM & WATKINS LLP
Joseph H. Lee, SBN 248046
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: (714) 540-1235
joseph.lee@lw.com

Respectfully submitted,

By: *s/ Zal K. Shroff*

LAWYERS' COMMITTEE FOR CIVIL
RIGHTS OF THE SAN FRANCISCO
BAY AREA
Zal K. Shroff, MJP 804620
Elisa Della-Piana, SBN 226462
Hadley Rood, SBN 348168
131 Steuart Street, Ste. 400
San Francisco, CA 94105
Telephone: (415) 543-9444
zshroff@lccrsf.org
edellapiana@lccrsf.org
hrood@lccrsf.org

By: *s/ John Thomas H. Do*

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION OF
NORTHERN CALIFORNIA
John Thomas H. Do, SBN 285075
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 293-6333
jdo@aclunc.org

*Attorneys for Plaintiffs-Appellees
Coalition on Homelessness, Toro
Castaño, Sarah Cronk, Joshua Donohoe,
Molique Frank, David Martinez, Teresa
Sandoval, and Nathaniel Vaughn*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form17instructions.pdf

**9th Cir. Case Number(s)** 23-15087

The undersigned attorney or self-represented party states the following:

[X] I am unaware of any related cases currently pending in this court.

[ ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[ ] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** *s/ Alfred C. Pfeiffer, Jr.*  **Date** April 4, 2023
*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 17**  *New 12/01/18*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**  23-15087

I am the attorney or self-represented party.

**This brief contains**  13987  **words,** including  0  words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**  *s/ Alfred C. Pfeiffer, Jr.*  **Date**  April 4, 2023
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**  *Rev. 12/01/22*

## **ATTESTATION**

I, Alfred C. Pfeiffer, Jr., am the ECF user whose user ID and password authorized the filing of this document. Under Circuit Rule 25-5(e), I attest that all signatories to this document have concurred in this filing.


Dated:  April 4, 2023            *s/ Alfred C. Pfeiffer, Jr.*
                                       Alfred C. Pfeiffer, Jr.