No. 23-15087

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

COALITION ON HOMELESSNESS; TORO CASTAÑO; SARAH CRONK;
JOSHUA DONOHOE; MOLIQUE FRANK; DAVID MARTINEZ; TERESA
SANDOVAL; and NATHANIEL VAUGHN,

*Plaintiffs-Appellees*,

v.

CITY AND COUNTY OF SAN FRANCISCO; SAN FRANCISCO POLICE
DEPARTMENT; SAN FRANCISCO DEPARTMENT OF PUBLIC WORKS;
SAN FRANCISCO DEPARTMENT OF HOMELESSNESS AND
SUPPORTIVE HOUSING; SAN FRANCISCO FIRE DEPARTMENT; and
SAN FRANCISCO DEPARTMENT OF EMERGENCY MANAGEMENT,

*Defendants-Appellants*.

On Appeal from the United States District Court
for the Northern District of California
No. 4:22-cv-05502-DMR
Before the Honorable Donna M. Ryu

---

### OPPOSITION TO MOTION TO MODIFY THE PRELIMINARY
### INJUNCTION ORDER PENDING APPEAL

---

LAWYERS' COMMITTEE FOR CIVIL RIGHTS
OF THE SAN FRANCISCO BAY AREA
Zal K. Shroff, MJP 804620
131 Steuart Street, Ste. 400
San Francisco, CA 94105
Telephone: (415) 543-9444

*Attorneys for Plaintiffs-Appellees*
*Coalition on Homelessness, Toro Castaño, Sarah Cronk, Joshua Donohoe,*
*Molique Frank, David Martinez, Teresa Sandoval, and Nathaniel Vaughn*
*Additional Counsel Listed on Inside Cover*

i

## ADDITIONAL COUNSEL FOR PLAINTIFFS-APPELLEES

LAWYERS' COMMITTEE FOR CIVIL RIGHTS
OF THE SAN FRANCISCO BAY AREA
Elisa Della-Piana, SBN 226462
Hadley Rood, SBN 348168
131 Steuart Street, Ste. 400
San Francisco, CA 94105
Telephone: (415) 543-9444
edellapiana@lccrsf.org
hrood@lccrsf.org

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF NORTHERN CALIFORNIA
John Thomas H. Do, SBN 285075
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 293-6333
jdo@aclunc.org

LATHAM & WATKINS LLP
Alfred C. Pfeiffer, Jr., SBN 120965
505 Montgomery Street, Ste 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
al.pfeiffer@lw.com

LATHAM & WATKINS LLP
Joseph H. Lee, SBN 248046
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: (714) 540-1235
joseph.lee@lw.com

*Attorneys for Plaintiffs-Appellees*
*Coalition on Homelessness, Toro Castaño, Sarah*
*Cronk, Joshua Donohoe, Molique Frank, David*
*Martinez, Teresa Sandoval, and Nathaniel Vaughn*

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...............................................................................1

II.    SUMMARY OF LITIGATION..........................................................3

     A.    The City's Motion Misrepresents the Record .......................3

     B.    The District Court's Tailored Preliminary Injunction.........................4

     C.    The City's Improper Administrative Motion and Stay Request Before the District Court ...................................4

III.   STANDARD OF REVIEW ...............................................................5

IV.   ARGUMENT.....................................................................................6

     A.    The City Fails to Make a Strong Showing of Success on Appeal .......6

          1.    The Injunction is Narrowly Tailored to Adhere to This Court's Holdings in *Martin* and *Johnson*. .................................6

          2.    The City Cannot Show Clear Error in the District Court's Detailed Factual Findings. .........................................9

          3.    The District Court Followed Ninth Circuit Precedent Rather Than Ordering the City to Follow Its Enforcement Bulletin....................................................11

          4.    The City's Arguments are Waived on Appeal.........................13

     B.    The City Fails to Establish Irreparable Injury and or that the Public Interest Favors a Stay ...........................15

     C.    Unhoused Individuals Will be Subjected to Irreparable Harm if the Injunction is Modified or Stayed...................................18

V.    CONCLUSION................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*A-1 Ambulance Service, Inc. v. Monterey*,
90 F.3d 333 (9th Cir. 1996) ...............................................................14

*Al Otro Lado v. Wolf*,
952 F.3d 999 (9th Cir. 2020) ............................................................15

*Arizona Dream Act Coalition v. Brewer*,
757 F.3d 1053 (9th Cir. 2014) ....................................................17, 18

*Ayotte v. Planned Parenthood of Northern New England*,
546 U.S. 320 (2006)............................................................................12

*Barrientos v. 1801-1825 Morton LLC*,
583 F.3d 1197 (9th Cir. 2009) ......................................................... 14

*Califano v. Yamasaki*,
442 U.S. 682 (1979)........................................................................ 12

*Doe #1 v. Trump*,
957 F.3d 1050 (9th Cir. 2020) ...............................................2, 15, 16

*In re E.R. Fegert, Inc.*,
887 F.2d 955 (9th Cir. 1989) ............................................................14

*East Bay Sanctuary Covenant v. Trump*,
932 F.3d 742 (9th Cir. 2018) ...........................................................18

*Federal Trade Commission v. Qualcomm Inc.*,
935 F.3d 752 (9th Cir. 2019) ....................................................6, 9, 11

*Fund for Empowerment v. City of Phoenix*,
No. 22-cv-02041, 2022 WL 18213522 (D. Ariz. Dec. 16, 2022) ...................8, 9

*Johnson v. City of Grants Pass*,
50 F.4th 787 (9th Cir. 2022) ....................................................7, 8, 9

*Jones v. City of Los Angeles*,
    444 F.3d 1118 (9th Cir. 2006), *vacated on other grounds*, 505 F.3d
    1006 (9th Cir. 2007) ................................................................................7

*Lair v. Bullock*,
    697 F.3d 1200 (9th Cir. 2012) ........................................................6, 19

*Lavan v. City of Los Angeles*,
    693 F.3d 1022 (9th Cir. 2012) ..............................................................16

*Lazar v. Kroncke*,
    862 F.3d 1186 (9th Cir. 2017) ..............................................................14

*Le Van Hung v. Schaaf*,
    No. 19-cv-01436, 2019 WL 1779584 (N.D. Cal. Apr. 23, 2019) ......18

*Leiva-Perez v. Holder*,
    640 F.3d 962 (9th Cir. 2011) ...................................................2, 6, 15

*Lentini v. California Center for the Arts, Escondido*,
    370 F.3d 837 (9th Cir. 2004) ................................................................11

*Lo v. County of Siskiyou*,
    558 F. Supp. 3d 850 (E.D. Cal. 2021) .................................................16

*Martin v. City of Boise*,
    920 F.3d 584 (9th Cir. 2019) ............................................................7, 8

*McCormack v. Hiedeman*,
    694 F.3d 1004 (9th Cir. 2012) ..............................................................12

*Melendres v. Arpaio*,
    784 F.3d 1254 (9th Cir. 2015) ..............................................11, 18, 20

*Nader v. Brewer*,
    386 F.3d 1168 (9th Cir. 2004) ................................................................6

*Nken v. Holder*,
    556 U.S. 418 (2009) ..........................................................................5, 18

*Norsworthy v. Beard*,
    No. 14-cv-00695, 2015 WL 1907518 (N.D. Cal. Apr. 27, 2015) ......19

v

*Roman v. Wolf*,
   977 F.3d 935 (9th Cir. 2020) .................................................................11

*Sharp v. Weston*,
   233 F.3d 1166 (9th Cir. 2000) ..............................................................11

*Sierra Club v. Trump*,
   929 F.3d 670 (9th Cir. 2019) .................................................................18

*United Nurses Associations of California v. National Labor Relations*
   *Board*,
   871 F.3d 767 (9th Cir. 2017) .................................................................14

*Warren v. City of Chico*,
   No. 21-cv-00640, 2021 WL 2894648 (E.D. Cal. July 8, 2021) ...........7

*Washington v. Trump*,
   847 F.3d 1151 (9th Cir. 2017) ......................................................6, 18

## I.   INTRODUCTION

The district court's preliminary injunction faithfully applied this Court's narrow holdings in *Martin* and *Johnson* in precluding enforcement of anti-homelessness laws against unhoused individuals without practical access to shelter. A largely uncontested record demonstrated that San Francisco residents are involuntarily homeless when the City punishes them for existing in public. This is because the City's shelter system is thousands of beds short, functionally at capacity, and effectively closed to voluntary access. But the injunction expressly permits enforcement against individuals who do already have access to shelter or housing, in accordance with this Court's prior holdings.

The City's motion is simply its latest attempt to avoid complying with the Eighth Amendment. It contends that the injunction should be limited to compliance with the City's prior Enforcement Bulletin—which would essentially allow the City to enforce its anti-homelessness laws under the pretense that the City offers shelter to all unhoused individuals. But the district court denied the City's stay motion precisely because the factual record established that the City does not and cannot offer shelter to the hundreds of unhoused people it seeks to forcibly displace pursuant to its former policies. Nor have Plaintiffs ever accepted these policies as constitutional because the City's shelter system is fully at capacity, functionally closed, and fundamentally inaccessible to unsheltered homeless individuals prior to enforcement. In reality, there is no basis to alter the district court's narrow injunction—which already mirrors previous Eighth Amendment injunctions upheld

by this Court.

There is no merit to the City's motion. The City never argued below that the injunction should be limited to enjoining the City to follow its own enforcement policies. The City's appeal does not even contain this argument. This Court should not heed the City's request to ignore the district court's narrowly tailored order on the basis of these unpreserved and meritless arguments.

The City has also failed to demonstrate facts or law warranting modification of the preliminary injunction pending appeal. The injunction has already been in effect for more than four months. Yet the City introduced *nothing* in the record below to support its claim that it has suffered irreparable injury by merely following binding Ninth Circuit precedent. Because the City does not demonstrate irreparable harm—the "critical" stay factor—a stay is unwarranted. *See Leiva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011) (per curiam). This Court should affirm the district court's rejection of the City's request for stay on this basis alone.

The City now attempts to introduce a single three-page declaration with conclusory assertions about a purported increase in sidewalk accessibility violations and drug use as a result of the injunction. But the City concedes that the injunction permits enforcement of sidewalk accessibility, drug laws, and public health regulations. As such, the injunction causes the City none of the harms asserted. The City's threadbare declaration was also never presented to the district court. Regardless, this Court has held that such unsupported assertions do not establish irreparable harm. *See also Doe #1 v. Trump*, 957 F.3d 1050, 1059-60 (9th Cir. 2020).

For these reasons, this Court should deny the City's motion.

## II.    SUMMARY OF LITIGATION

### A.    The City's Motion Misrepresents the Record

The City's motion purports that the City always offers shelter to unhoused individuals and only seeks to enforce anti-homelessness laws against those who first refuse a valid offer of available shelter. Mot. at 3-5. But the district court found there was a "veritable mountain" of evidence that the City does not make shelter available to unhoused residents prior to enforcement for existing in public, notwithstanding any policy to the contrary. 3-ER-0376; 1-ER-0038-39; *see also* Dkt. No. 34, Answering Br. at 12. The district court also rejected the City's unsupported claim that unhoused people are refusing appropriate shelter *en masse*, finding instead that unhoused individuals in the City have no practical access to shelter—often even after enforcement—because the demand for shelter is so high and the City is thousands of shelter beds short. 1-ER-0038; *see also* Dkt. No. 34 at 11-12; 7-ER-1602-03. The district court also found that the City's shelter system is over capacity and closed to all voluntary access for those seeking shelter. 1-ER-0005; 1-ER-0026-27; 1-ER-0042-43; 1-ER-0049; *see also* Dkt. No. 34 at 10-11. Over a thousand people are languishing on a shelter waitlist that has been closed for months; one cannot wait in line for shelter, nor does a functioning phone reservation system exist. 1-ER-0007; 7-ER-1604. The City has nonetheless forcibly displaced unhoused individuals through citation or arrest *hundreds* of times over the last several years without even pretending to offer them shelter. *See* Dkt. No. 34 at 37;

7-ER-1614-20 (analyzing three years of City arrest and citation data). The City did not meaningfully contest or rebut these key factual findings below—and they are not challenged on appeal. 1-ER-0039-40; *see also* Dkt. No. 34 at 11-12, 49-50.

**B.     The District Court's Tailored Preliminary Injunction**

The district court granted Plaintiffs' motion for preliminary injunction more than four months ago, on December 23, 2022. 1-ER-0002-51. The order enjoins the City from enforcing specific anti-homelessness laws against the "*involuntarily homeless* . . . as long as there are more homeless individuals in San Francisco than there are shelter beds available." 1-ER-0051. Nothing in the injunction precludes the City from inquiring about an individual's housing status, from offering housing or services, or from enforcing other laws regarding public access, drugs, or public health. *See* 1-ER-0049 (listing laws not enjoined by the injunction); *see also* Dkt. No. 34 at 3 ("San Francisco's own amici recognize that the injunction does not prevent the City from providing housing and services to unhoused individuals or from otherwise working to address homelessness."). The injunction also expressly permits enforcement against individuals who do have access to shelter or housing prior to enforcement and are therefore not "involuntarily homeless." 1-ER-0037; *see also* Dkt. No. 34 at 17-18.

**C.     The City's Improper Administrative Motion and Stay Request Before the District Court**

On January 12, 2023, the district court noted that the City had filed an improper administrative motion requesting permission to continue the City's encampment displacement operations that the district court already found likely to

violate the Eighth Amendment.  2-ER-0093.  The district court denied the City's improper procedural motion and instructed the City to file a substantive, appropriately noticed motion.  *Id.*; 2-ER-0076-77.  The City never filed the appropriate motion.  *See* Dkt. No. 35, Ex. A at 4-5.

Instead, on February 2, 2023, the City moved for a stay of the preliminary injunction, seeking effectively the same relief by asking the district court to authorize the City's unconstitutional encampment displacement operations.  Dkt. No. 35, Ex. A at 5-6.  The district court denied the motion on April 3, 2023—concluding that "Defendants are unlikely to succeed on the merits of their appeal" because they waived their arguments before the district court "despite the court having invited [the City] to raise it properly," and because "the court made factual findings that undercut Defendants' position."  *Id.* at 6, 8; *see also* Dkt. No. 34 at 16-17; 1-ER-0042.  The district court also noted that the City did "not cite any evidence regarding their inability to address public health and safety under the restrictions imposed by the preliminary injunction order."  Dkt. No. 35, Ex. A at 9.

## III.   STANDARD OF REVIEW

A stay pending appeal is an "intrusion into the ordinary processes of administration and judicial review" and "is not a matter of right, even if irreparable injury might otherwise result to the appellant."  *Nken v. Holder*, 556 U.S. 418, 427 (2009).   "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of [the court's] discretion."  *Id.* at 433-34.  Courts consider four factors to decide whether to stay or modify an injunction pending

appeal: (1) "the stay applicant has made a *strong showing* that he is likely to succeed on the merits"; (2) "[the applicant] will be irreparably injured absent a stay"; (3) "issuance of the stay will [not] substantially injure the other parties interested in the proceeding"; and (4) the "public interest" favors a stay. *Id.* at 434.

The first two *Nken* factors are the "most critical." *Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012); *Washington v. Trump*, 847 F.3d 1151, 1164 (9th Cir. 2017). Indeed, "stays must be denied to all [] who did not meet the applicable irreparable harm threshold, regardless of their showing on the other stay factors." *Leiva-Perez*, 640 F.3d at 965. A "strong showing" on the merits is also an especially onerous burden in the preliminary injunction context—because preliminary injunctions are reviewed only for abuse of discretion. *Nader v. Brewer*, 386 F.3d 1168, 1169 (9th Cir. 2004).

## IV.   ARGUMENT

### A.   The City Fails to Make a Strong Showing of Success on Appeal

As to the merits of the City's appeal, Plaintiffs incorporate by reference the arguments contained in their answering brief before this Court. *See* Dkt. No. 34. The City fails to demonstrate either a "strong showing" or even a "reasonable probability" of success on appeal. *Fed. Trade Comm'n v. Qualcomm Inc.*, 935 F.3d 752, 755 (9th Cir. 2019). Thus, without considering any other stay factors, modification of the district court's injunction pending appeal is not warranted.

#### 1.   The Injunction is Narrowly Tailored to Adhere to This Court's Holdings in *Martin* and *Johnson*.

The preliminary injunction enjoins the City from enforcing "laws and

6

ordinances to prohibit involuntarily homeless individuals from sitting, lying, or sleeping on public property . . . as long as there are more homeless individuals in San Francisco than there are shelter beds available"). 1-ER-0051. This follows *Martin v. City of Boise* to the letter. 920 F.3d 584, 604, 617 (9th Cir. 2019) ("so long as there is a greater number of homeless individuals in a jurisdiction than the number of available beds in shelters, the jurisdiction cannot prosecute homeless individuals for involuntarily sitting, lying and sleeping in public"); *see also Jones v. City of Los Angeles*, 444 F.3d 1118, 1138 (9th Cir. 2006) (same), *vacated on other grounds*, 505 F.3d 1006 (9th Cir. 2007).

In *Johnson v. City of Grants Pass*, the Ninth Circuit expressly affirmed *Martin*'s central holding. 50 F.4th 787, 795 (9th Cir. 2022) ("The formula established in Martin is that the government cannot prosecute homeless people for sleeping in public if there is a greater number of homeless individuals in [a jurisdiction] than the number of available shelter spaces."); *see id.* at 796 (noting that the district court had granted an injunction in *Johnson* because "[t]he record is undisputed that Grants Pass has far more homeless individuals than it has practically available shelter beds"). The district court's order applied the holdings of this Court exactly. Following *Martin* and *Johnson*, district courts throughout this Circuit have adopted Eighth Amendment injunctions with precisely the same language as the district court used here. *See, e.g, Warren v. City of Chico*, No. 21-cv-00640, 2021 WL 2894648, at *2 (E.D. Cal. July 8, 2021) ("[T]his Circuit has previously held that ordinances such as this are not enforceable, unless there is enough practically

7

available shelter within the City for all unhoused individuals."); *Fund for Empowerment v. City of Phoenix*, No. 22-cv-02041, 2022 WL 18213522, at *9 (enjoining "Camping and Sleeping Bans against individuals who practically cannot obtain shelter as long as there are more unsheltered individuals in Phoenix than there are shelter beds available").

The City argues that the injunction is overbroad because it would preclude the City from punishing unhoused people who do have access to shelter as long as the City's overall shelter shortage persists. Mot. at 12. To the contrary, the preliminary injunction *only* precludes the City from enforcing anti-homelessness laws against "involuntarily homeless" people. 1-ER-0049; 1-ER-0051. The injunction therefore *permits* the City to enforce its anti-homelessness ordinances—despite its massive shelter shortage—if an individual is *not* "involuntarily homeless" because that person has voluntary, practical access to adequate housing or shelter prior to enforcement. *See Martin*, 920 F.3d at 618 (holding enforcement impermissible only when shelter is not "practically available"). The preliminary injunction allows the City to ask if an individual has shelter and enforce if that person does, so there is no issue to review on appeal. The City is merely in denial that its unhoused residents have no practical access to shelter, a result of its own making. *See* Dkt. No. 34 at 10-12, 32-33, 40.

In this respect, the district court's order is deliberately limited in scope. It adopts the exact language most recently endorsed by this Court in *Johnson* to address the City's concerns. *See* 50 F.4th at 813 (noting the injunction only precludes

8

enforcement operations against "involuntarily homeless person[s]"); *see id.* at 792 n.2 ("Persons are involuntarily homeless if they do not have access to adequate temporary shelter [because it is not] realistically available to them"). Thus, the City's assertions that the preliminary injunction is overbroad are baseless. The district court did not abuse its discretion by following this Court's exact instructions. The City therefore cannot make a "strong showing" that this argument has "a reasonable probability" of success on appeal. *Qualcomm*, 935 F.3d at 755.[1]

2. The City Cannot Show Clear Error in the District Court's Detailed Factual Findings.

The City renews its unsupported claim that it only subjects unhoused individuals to criminal enforcement after they have been given a real, voluntary offer of appropriate shelter and have rejected it. Mot. at 12-13. But the district court already determined that the opposite is true based on a largely uncontested record. Dkt. No. 35, Ex. A at 6 ("in granting the preliminary injunction, the court made factual findings that undercut Defendants' position"); 1-ER-0039-40 ("Defendants do not meaningfully rebut evidence that San Francisco initiates encampment closures without actually knowing whether any shelter beds will be available to

---

[1] The City incorrectly purports that the injunction is overbroad because it rigidly relies on *Martin's* formula approach to determine who is involuntarily homeless. Mot. at 14-15. To the contrary, the district court analyzed lack of access to shelter as central to the Eighth Amendment inquiry. *See* Dkt. No. 34 at 30-34; *Johnson*, 50 F.4th at 792 ("[T]he number of homeless persons outnumber the available shelter beds. In other words, homeless persons have nowhere to shelter"); *Fund for Empowerment*, 2022 WL 18213522, at *3 ("individualized assessments" about housing status amidst a massive shelter shortage does not "preclude[] the need for a broad injunction").

9

encampment residents, and that the closure proceeds anyway. . . . Plaintiffs submit ample evidence that encampment closures have been carried out even when [city] representatives said there was no available bed space."); 1-ER-0040 ("Plaintiffs also offer evidence that closures took place without offers of bed space"). The district court found it "beyond dispute that homeless San Franciscans have no voluntary 'option of sleeping indoors,' and as a practical matter 'cannot obtain shelter.'" 1-ER-0042; 1-ER-0043 ("the parties agree that at this time, a homeless San Franciscan who wants a shelter bed has no avenue to ask for one, much less get one"); 1-ER-0005 ("San Francisco does not have enough available shelter beds"). The district court further concluded it was "wholly unconvinc[ed]" by the City's claim that unhoused individuals have access to shelter but "choose not to use it." 1-ER-0038.

The City ignores these well-supported findings on appeal. *See* Dkt. No. 34 at 34-36. The City's stay motion also attempts to circumvent the district court's clear factual findings in asking this Court to narrow the preliminary injunction to permit the forced displacement of unhoused individuals under the City's prior Enforcement Bulletin. The district court rejected the City's stay motion, noting: "Despite the opportunity to finally substantiate Defendants' position that 'every homeless person is offered shelter before being displaced by the City,' none of Defendants' witnesses stated that San Francisco officials offer shelter to every homeless individual before telling them to vacate public property." Dkt. No. 35, Ex. A at 8. These detailed factual determinations are unlikely to be disturbed on appeal because they are entitled to the highest deference, preventing the City from demonstrating a "strong

10

showing" of success on appeal. *Qualcomm*, 935 F.3d at 755; *see Lentini v. Cal. Ctr. for the Arts, Escondido*, 370 F.3d 837, 843 (9th Cir. 2004) (clear error standard is "significantly deferential").

> 3.  The District Court Followed Ninth Circuit Precedent Rather Than Ordering the City to Follow Its Enforcement Bulletin.

District courts have "broad discretion in fashioning a remedy," particularly in the context of a preliminary injunction. *Melendres v. Arpaio*, 784 F.3d 1254, 1265 (9th Cir. 2015) (*citing Sharp v. Weston*, 233 F.3d 1166, 1173 (9th Cir. 2000)); *see also Roman v. Wolf*, 977 F.3d 935, 942 (9th Cir. 2020) ("In time-sensitive circumstances, the district court's authority to issue broad equitable relief encompassed the authority to grant provisional relief to 'bring an ongoing violation to an immediate halt.'" (citations omitted)). Although it was free to provide "relief that the Constitution would not of its own force initially require if such relief is necessary to remedy a constitutional violation," *Melendres*, 784 at 1265, the district court granted the precise relief most recently articulated by the Ninth Circuit.

Contrary to the City's assertion, the district court's injunction did *not* require the City to adopt a new policy or revise its existing policies. *See* Mot. at 13; 1-ER-0051. Instead, the injunction merely prohibits the City from engaging in the criminalization of involuntary homelessness without providing access to shelter prior to enforcement. There is nothing overbroad about an injunction tailored to compliance with the Eighth Amendment.

The City's supporting case law is entirely inapposite. Plaintiffs do not request relief going beyond San Francisco. *Contra Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) (affirming a nationwide class action and noting the scope of relief appropriate under the circumstances). Rather than enjoin the City's prior policies wholesale, the injunction only prohibits the problematic, unconstitutional application of particular anti-homelessness statutes. *See Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328-329 (2006) (noting that an injunction is proper as long as it only "prohibit[s] unconstitutional applications" of a given statute). Those laws are only enjoined as applied to specific people and circumstances: involuntarily homeless individuals without practical access to shelter amidst a massive shelter shortage. *Contra McCormack v. Hiedeman*, 694 F.3d 1004, 1019 (9th Cir. 2012) (holding injunction only overbroad because all applications of the law were enjoined). None of the City's cases stand for the proposition that the district court must limit its injunction to the City's own policies as opposed to following this Court's precedents, particularly when the record is replete with constitutional violations despite the existence of those policies. *See, e.g.*, 2-ER-0093; 3-ER-0316-22; 1-ER-0039; 1-ER-0042; *see also* Dkt. No. 34 at 16-17; 7-ER-1575; 7-ER-1577.

The City baselessly asserts that Plaintiffs would have consented to the district court's injunction being limited to the City's own prior enforcement policy. Mot. at 13. But Plaintiffs made clear to the district court that the factual record renders the City's prior enforcement bulletin impossible to implement in compliance with the Constitution because the City's shelter system is not practically accessible to anyone

12

who is unsheltered prior to enforcement under the bulletin. *See* 3-ER-0388-89 ("[T]he SFPD policy [may be] lawful to the extent that there is an open shelter system where anyone can access it and it is practically accessible to someone prior to being enforced against. That's just not the reality in San Francisco"); 3-ER-0367.

The district court's factual findings, recounted above, confirm this reality. Indeed, the district court found the City's reliance on its enforcement bulletin unavailing where unhoused individuals do not have practical access to shelter anywhere in the City prior to the City's unlawful enforcement operations. *See also* 1-ER-0038-43; Dkt. No 35, Ex. A at 7 (district court affirming the same in denying the City's motion for stay).

There is no basis to justify modifying the scope of the injunction to authorize the City to continue prior encampment operations—especially since the district court detailed the City's past unconstitutional practices despite written policies and used its sound discretion to issue a preliminary injunction co-extensive with this Court's holdings in *Martin* and *Johnson*.

### 4. The City's Arguments are Waived on Appeal.

The City also failed to preserve all challenges to the scope of the injunction. *See* Dkt. 35, Ex. A at 6; 1-ER-0049 ("In their opposition brief, Defendants wholly fail to object to or even address the substance or scope of the proposed preliminary injunction, thereby conceding these issues"); 3-ER-0385-86 ("the City has waived its right to say how the Court should exercise its discretion if I decide that plaintiffs are entitled to preliminary injunctive relief"). The City cannot now raise this issue

on appeal. *See Barrientos v. 1801-1825 Morton LLC*, 583 F.3d 1197, 1216 (9th Cir. 2009) ("We agree with [appellees] that [appellant] waived the objection to the scope of relief by failing to raise it before the district court."); *Lazar v. Kroncke*, 862 F.3d 1186, 1203 (9th Cir. 2017) ("Here, by contrast, the district court expressly found [appellant's] claim to have been waived."). The City had ample opportunity to address these arguments in their opposition below and have thus waived those arguments on appeal.

The City suggests that a brief exchange at oral argument on the motion for preliminary injunction motion is sufficient to preserve an argument that was never briefed. Mot. at 14-15. The City is wrong on the law.[2] Regardless, the City never *once* argued—that the district court's injunction should be limited to mandating compliance with the City's own prior enforcement bulletin. Nor does this argument

---

[2] This Court does not review mixed questions of fact and law that were not preserved and for which the record was not appropriately developed. *See A-1 Ambulance Serv., Inc. v. Monterey*, 90 F.3d 333, 339 (9th Cir. 1996) (review of waived arguments on appeal is only permitted if the question raised is "purely one of law" and "does not depend on the factual record developed below"); *United Nurses Assocs. of Cal. v. Nat'l Lab. Rels. Bd.*, 871 F.3d 767, 780 (9th Cir. 2017) ("This perfunctory argument is inadequately briefed and therefore waived." (citations omitted)); *In re E.R. Fegert, Inc.*, 887 F.2d 955, 957 (9th Cir. 1989) (issue must be "raised sufficiently for the trial court to rule on it" before it is preserved). For this precise reason, the district court explicitly rejected the City's stay motion below. Dkt. No. 35, Ex. A at 8 ("[T]he court – and Plaintiffs – never had the opportunity to consider Defendants' arguments . . . despite the court having invited Defendants to raise it properly. At best, Defendants raised it on the fly in oral argument, thereby depriving Plaintiffs of a meaningful chance to respond"). The City's entire appeal rests on these unpreserved and highly factual questions regarding the purported scope of its enforcement that cannot be fairly presented on appeal at all because the City developed no record on them below. *See* Dkt. No. 34 at 48-49; 3-ER-0387.

appear anywhere in the City's opening appellate brief before this Court. In fact, the City's opening brief exhorts this Court *not* to require the City to follow its own policies with respect to the Fourth Amendment, contradicting the City's argument here. Dkt. No. 11 at 54-57; Dkt. No. 34 at 59-61. The City cannot raise this new argument for the first time as a basis to justify its stay request without even including the argument as part of the City's appeal. These repeatedly waived and unmeritorious arguments expose the City's motion as improper, establishing the City's failure to show a reasonable probability of success on appeal.

### B. The City Fails to Establish Irreparable Injury and or that the Public Interest Favors a Stay

No stay or modification pending appeal can be granted absent a "critical" showing of irreparable harm. *Leiva-Perez*, 640 F.3d at 964-65. But the City cannot demonstrate any irreparable harm, let alone one that justifies gutting the preliminary injunction. The City "cannot meet [its] burden by submitting conclusory factual assertions and speculative arguments that are unsupported in the record." *Doe #1*, 957 F.3d at 1059-60. "Rather than submitting evidence of actual burdens and delays it has experienced since the injunction issued" now months ago, the City has made no attempt to show "that it will suffer harm over the requisite interim period." *Al Otro Lado v. Wolf*, 952 F.3d 999, 1007 (9th Cir. 2020).

When the City moved for a stay before the district court, it did not offer any evidence to support its claim that it suffers irreparable injury simply by following binding Ninth Circuit law. This Court should therefore not consider this mixed

question of fact and law that the City never properly developed below. *See supra* n.1 (collecting cases). Nonetheless, for the first time before this Court, the City introduces a three-page declaration purporting, without any factual support, that the City has seen an increase in inaccessible sidewalks and drug use as a result of the injunction. Dkt. No. 51-2 ¶¶ 5-8. This declaration refers to no specific incidents, no concrete facts, no supporting data, and no causal explanation connecting the injunction to these alleged harms. These "conclusory factual assertions . . . unsupported in the record" are mere alarmist scapegoating of a marginalized group and do not amount to irreparable harm. *See Doe #1*, 957 F.3d at 1059-60.

Regardless, the City readily admits that it is authorized to enforce all manner of accessibility, drug, and public health laws against unhoused individuals notwithstanding the injunction. Mot. at 16-17. The district court noted these various enforcement tools at the City's disposal in denying the City's motion below—also enumerated in the City's own updated police bulletin—including the City's ability to remove tents and other property that is obstructing pedestrian access or creating a genuine safety hazard. 1-ER-0049; Dkt. No. 13 at 113-15; *Lo v. Cnty. of Siskiyou*, 558 F. Supp. 3d 850, 871-72 (E.D. Cal. 2021) (granting preliminary injunction when municipality has other tools to mitigate impacts on public health and safety); *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1033 (9th Cir. 2012) (noting that constitutional protections for unhoused people did not actually "constrain municipal governments from addressing . . . homelessness or . . . maintain[ing] public health

and safety"). As such, the City's sole supporting declaration is irrelevant to the prohibitions contained in the district court's preliminary injunction.

The City therefore fails to establish irreparable injury. Contrary to their brief, the City can and should still "make its beds available" to those on the street. Mot. at 16.[3] Indeed, the only evidence in the record undermines the City's claimed injury. As the district court noted, the City submitted evidence that it has been able to "clean" and "provide services" at homeless encampments since the injunction. 2-ER-0078-79; Dkt. No. 35, Ex. A at 9. Thus, the City can still ensure the public right-of-way, enforce drug laws, and protect public health without criminalizing individuals merely for being unhoused and without voluntary access to shelter.

The City also argues that the Court should not disturb the "rightful independence of state governments in carrying out their domestic policy." Mot. at 18. But the City's general discretion over municipal policy does not permit it to violate individuals' constitutional rights. *See, e.g.*, *Arizona Dream Act Coalition v. Brewer*, 757 F.3d 1053, 1069 (9th Cir. 2014). Such "institutional injury" is also not

---

[3] The City's own *amici* agree that the injunction does not hinder service delivery to unhoused people to properly address the homelessness crisis. *See* Dkt. No. 17-1 at 5-7; Dkt. No. 34 at 44. The City's only real complaint is that it can no longer play a shell game with shelter by purporting to keep specific beds vacant as a pretext to enforce anti-homeless laws despite an at-capacity shelter system that no person can access. *See* 7-ER-1583-84. The City's appeal does not contest these points that Plaintiffs raised below. Meanwhile, Plaintiffs' *amici* confirm—as does the district court's factual findings—that the City's claims of widespread service resistance are unfounded. The cause of the City's unsheltered homelessness crisis is a lack of affordable housing and a shelter system that is thousands of beds short, at capacity, and closed. *See* Dkt. No. 42-2 at 27-30; 1-ER-0007; 7-ER-1604.

legally cognizable as irreparable harm on a stay motion. *See*, *e.g.*, *East Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 778 (9th Cir. 2018) (rejecting federalism arguments in denying stay because government can "pursue and vindicate its interests in the full course of this litigation"); *Washington*, 847 F.3d at 1168 ("[R]esolution of the case on the merits, not whether the injunction is stayed pending appeal, [] will affect those principles" (citation omitted)). Because the City cannot show irreparable harm, its motion should be denied on this basis alone.

The City incorrectly suggests that the public interest is served by a stay so long as they have shown harm to the government. Mot. at 16. This is not the law. *See Sierra Club v. Trump*, 929 F.3d 670, 705 (9th Cir. 2019) (even when the government is a party, "[p]ublic interest is a concept to be considered broadly"); 1-ER-0047 (citing *Le Van Hung v. Schaaf*, No. 19-cv-01436, 2019 WL 1779584, at *7 (N.D. Cal. Apr. 23, 2019)). Regardless, the injunction ensures that the City's conduct aligns with the Constitution, and it is always in the public interest for the government to abide by the Constitution. *Arizona Dream Act Coalition*, 757 F.3d at 1069 ("it would not be equitable or in the public's interest to allow the state . . . to violate the requirements of federal law" (citation omitted)); *Melendres*, 784 F.3d at 1265. Thus, the balance of the second and fourth *Nken* factors strongly favors denying the stay.

### C. Unhoused Individuals Will be Subjected to Irreparable Harm if the Injunction is Modified or Stayed

This Court need look no further than the City's inability to show irreparable harm or possible success on appeal in denying the City's motion. *See Lair*, 697 F.3d at 1204. But modification or stay of the injunction would undoubtedly cause Plaintiffs and hundreds of unhoused San Franciscans to suffer irreparable harm and substantial injury. *Nken*, 556 U.S. at 436; *Norsworthy v. Beard*, No. 14-cv-00695, 2015 WL 1907518, at *4 (N.D. Cal. Apr. 27, 2015) (rejecting stay where "order granting an injunction was explicitly based on the finding that [plaintiff] is likely to succeed on the merits and that she is suffering from . . . deprivation of her Eighth Amendment rights."). The district court's factual findings in granting the preliminary injunction show that granting the City's request for modification of the injunction would authorize unrelenting sweeps and criminalization of unhoused people that are both deeply traumatizing and do nothing to solve homelessness— regardless of purported shelter offers or constitutionality. 1-ER-0031; 7-ER-1623- 28; 1-ER0046 (crediting eyewitness and expert accounts of the City's "dehumanizing" actions). The City admits that these enforcement operations the district court found to violate the Constitution occur at least several times each week. *Compare* Mot. at 17, *with* 1-ER-0039-40; Dkt. No. 34 at 35; 7-ER-1607-13. At the same time, Plaintiff Coalition on Homelessness would have to divert even more resources to monitor Defendants' misconduct if the injunction is stayed. 7-ER-1662- 65; 7-ER-1694-95. Thus, the balance of injuries strongly favors denying the stay.

The City falsely suggests that Plaintiffs suffer no harm from modification of the injunction because Plaintiffs agree that the City's pre-injunction policies comply

with the Eighth Amendment. Mot. at 3, 5, 19. To the contrary, Plaintiffs have repeatedly affirmed that voluntary access to the shelter system within the City is a necessary predicate to any enforcement against involuntarily homeless individuals—consistent with the district court's current injunction and Ninth Circuit precedent. *See* 3-ER-0388-89; 3-ER-0367; *see also supra* Subsection A(3).

Plaintiffs maintain that the City's prior enforcement policies would not be constitutional since it is undisputed that the City does not have enough shelter for the unhoused, the shelter system is closed, and shelter is not practically accessible to any unhoused individuals without being subject to an enforcement action. *See* Dkt. No. 34 at 10-15. Nor does the evidence show that SFPD officers ever "secure appropriate shelter before taking enforcement action" under the prior SFPD Bulletin—belying any argument that the City's prior policies provide a meaningful standard for constitutional compliance. *See* Dkt. No. 35, Ex. A at 2; 1-ER-0038-40 (rejecting Defendants' "wholly unconvincing" rebuttal to Plaintiffs' account); 7-ER-1573-76; 5-ER-0966-68; 3-ER-057882; 7-ER-1614-20. This repeated conduct violates Plaintiffs' Eighth Amendment rights, which establishes irreparable harm *per se* and necessitated the preliminary injunction in the first place. 1-ER-0046; *see Melendres*, 695 F.3d at 1002.

## V. CONCLUSION

For the foregoing reasons, the Court should deny the City's motion.

Dated:  April 24, 2023

By: _s/ Alfred C. Pfeiffer, Jr._

LATHAM & WATKINS LLP
Alfred C. Pfeiffer, Jr., SBN 120965
505 Montgomery Street, Ste 2000
San Francisco, CA 94111
Telephone: (415) 391-0600
al.pfeiffer@lw.com

LATHAM & WATKINS LLP
Joseph H. Lee, SBN 248046
650 Town Center Drive, 20th Floor
Costa Mesa, CA 92626
Telephone: (714) 540-1235
joseph.lee@lw.com

Respectfully submitted,

By: _s/ Zal K. Shroff_

LAWYERS' COMMITTEE FOR CIVIL
RIGHTS OF THE SAN FRANCISCO
BAY AREA
Zal K. Shroff, MJP 804620
Elisa Della-Piana, SBN 226462
Hadley Rood, SBN 348168
131 Steuart Street, Ste. 400
San Francisco, CA 94105
Telephone: (415) 543-9444
zshroff@lccrsf.org
edellapiana@lccrsf.org
hrood@lccrsf.org

By: _s/ John Thomas H. Do_

AMERICAN CIVIL LIBERTIES
UNION FOUNDATION OF
NORTHERN CALIFORNIA
John Thomas H. Do, SBN 285075
39 Drumm Street
San Francisco, CA 94111
Telephone: (415) 293-6333
jdo@aclunc.org

*Attorneys for Plaintiffs-Appellees
Coalition on Homelessness, Toro
Castaño, Sarah Cronk, Joshua Donohoe,
Molique Frank, David Martinez, Teresa
Sandoval, and Nathaniel Vaughn*

21

## **ATTESTATION**

I, Alfred C. Pfeiffer, Jr., am the ECF user whose user ID and password authorized the filing of this document. Under Circuit Rule 25-5(e), I attest that all signatories to this document have concurred in this filing.

Dated:  April 24, 2023                    *s/ Alfred C. Pfeiffer, Jr.*

Alfred C. Pfeiffer, Jr.