No. 23-15087
_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
_____

COALITION ON HOMELESSNESS; TORO CASTAÑO; SARAH CRONK; JOSHUA DONOHOE; MOLIQUE FRANK; DAVID MARTINEZ; TERESA SANDOVAL; NATHANIEL VAUGHN,

*Plaintiffs-Appellees*

v.

CITY AND COUNTY OF SAN FRANCISCO, et al.,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Northern District of California
No. 4:22-cv-05502-DMR
Hon. Donna M. Ryu

_____

## APPELLANTS' REPLY BRIEF
## (PRELIMINARY INJUNCTION APPEAL)

_____

DAVID CHIU
City Attorney
YVONNE R. MERÉ
Chief Deputy City Attorney
WAYNE SNODGRASS
Deputy City Attorney
MEREDITH B. OSBORN
Chief Trial Deputy

JAMES M. EMERY
EDMUND T. WANG
KAITLYN M. MURPHY
RYAN C. STEVENS
MIGUEL A. GRADILLA
Deputy City Attorneys
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone:  (415) 554-4628 (Emery)
Facsimile:   (415) 554-4699
Email: jim.emery@sfcityatty.org

Attorneys for Appellants CITY AND COUNTY OF SAN FRANCISCO, et al.

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................ ii

INTRODUCTION ............................................................................. 1

ARGUMENT .................................................................................... 4

    I.    The Overbroad Injunction Far Exceeds The Scope Of *Martin* And *Johnson* ......................................................................... 4

        A.    The Eighth Amendment Allows Enforcement Of Sit/Lie/Sleep Laws Against Unhoused Persons Who Have Access To Adequate Shelter ................................. 4

        B.    Encampment Resolutions Have A Limited Geographic Scope ....................................................................... 10

        C.    San Francisco Police Code Section 169 Prohibits Only Tents And Other Structures, And Expressly Requires A Shelter Offer Before Enforcement ............................. 11

        D.    The Court Should Not Have Enjoined San Francisco Police Code Section 168 ........................................... 12

        E.    The Challenged Injunction Hinges On The Number Of Persons Experiencing Homelessness In The City .................... 14

        F.    The District Court And Plaintiffs Created Uncertainty About What The Injunction Means By Threats To Enforce ...................................................................... 15

    II.    The Court Can And Should Consider The Amici Arguments Supporting San Francisco ................................................... 17

    III.    Plaintiffs Admit San Francisco's Bag And Tag Policy Exceeds The Fourth Amendment's Requirements ........................... 20

    IV.    San Francisco Preserved Its Arguments For Appeal ......................... 21

CONCLUSION ............................................................................... 28

CERTIFICATE OF COMPLIANCE ............................................... 30

CERTIFICATE OF SERVICE ........................................................ 31

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*A-1 Ambulance Serv., Inc. v. Cnty. of Monterey*
  90 F.3d 333 (9th Cir. 1996) ........................................................... 21, 22

*Allen v. Santa Clara Cnty. Corr. Peace Officer Assoc.*
  38 F.4th 68 (9th Cir. 2022) ............................................................ 17, 22

*Ayotte v. Planned Parenthood of N. New England*
  546 U.S. 320 (2006) ........................................................................27

*Barrientos v. 1801-1825 Morton LLC*
  583 F.3d 1197 (9th Cir. 2009) .........................................................25

*Benjamin v. Fraser*
  156 F. Supp. 2d 333 (S.D.N.Y. 2001) ...............................................20

*Bilodeau v. City of Medford*
  No. 1:21-CV-00766-CL, 2022 WL 17853323 (D. Or. Nov. 29, 2022),
  *report and recommendation adopted*, No. 1:21 CV 00766-CL, 2022 WL
  17849475 (D. Or. Dec. 22, 2022).......................................................11

*Blake v. City of Grants Pass*
  No. 1:18-CV-01823-CL, 2020 WL 4209227 (D. Or. July 22, 2020),
  *aff'd in part, vacated in part,* 50 F.4th 787 (9th Cir. 2022) ................14

*Califano v. Yamasaki*
  442 U.S. 682 (1979) ........................................................................17

*City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*
  254 F.3d 882 (9th Cir. 2001)............................................................25

*Cooper-Levy v. City of Miami,*
  2022 WL 17477009 (S.D. Fla. Dec. 6, 2022) ....................................18

*Daves v. Dallas Cnty.*
  22 F.4th 552 (5th Cir. 2022)............................................................17

*E.V. v. Robinson, Jr.*
  906 F.3d 1082 (9th Cir. 2018)...........................................................22

*Easyriders Freedom F.I.G.H.T. v. Hannigan*
  92 F.3d 1486 (9th Cir. 1996) ............................................................18

*Farmer v. Brennan*
  511 U.S. 825 (1994) ..........................................................................19

*Garcia v. City of Los Angeles*
  481 F. Supp. 3d 1031 (C.D. Cal. 2020)................................................18

*Hanna v. Peters*
  No. 2:21-cv-00493-SB, 2022 WL 833165 (D. Or. Mar. 21, 2022) ....................20

*Johnson v. City of Grants Pass*
  50 F.4th 787 (9th Cir. 2022)......................................................... *passim*

*Lawman v. City & Cnty. of San Francisco*
  159 F. Supp. 3d 1130 (N.D. Cal. 2016) ............................................19

*Martin v. City of Boise*
  920 F.3d 584 (9th Cir. 2019)........................................................ *passim*

*Melendres v. Arpaio*
  784 F.3d 1254 (9th Cir. 2015) ..........................................................20

*Menotti v. City of Seattle*
  409 F.3d 1113 (9th Cir. 2005) ..........................................................19

*Monell v. Department of Soc. Svcs.*
  436 U.S. 658 (1978) ................................................................ 18, 19

*Redman v. Cnty. of San Diego*
  942 F.2d 1435 (9th Cir. 1991),
  *abrogated on other grounds, Farmer v. Brennan,* 511 U.S. 825 (1994) .............19

*Roman v. Wolf*
  977 F.3d 935 (9th Cir. 2020)............................................................20

*Stone v. City & County of San Francisco*
  968 F.2d 850 (9th Cir. 1992)............................................................20

*Trevino v. Gates*
  99 F.3d 911 (9th Cir. 1996)..............................................................19

*Ulrich v. City & Cnty. of San Francisco*
  308 F.3d 968 (9th Cir. 2002)............................................................19

*United States v. Gementera*
  379 F.3d 596 (9th Cir. 2004) ................................................................17

*United States v. Lloyd*
  807 F.3d 1128 (9th Cir. 2015) ...............................................................22

*United States v. Van Winrow*
  951 F.2d 1069 (9th Cir. 1991) ...............................................................17

*Warren v. City of Chico*
  No. 2:21-CV-00640-MCE- DMC, 2021 WL 2894648
  (E.D. Cal. July 8, 2021) .................................................................. 11, 13

*Women Prisoners of D.C. Dep't of Corr. v. D.C.*
  93 F.3d 910 (D.C. Cir. 1996) ................................................................20

**Constitutional Provisions**
U.S. Const.
  Amend. IV ......................................................................................19, 20
  Amend. VIII ...............................................................................*passim*

**Federal Statutes**
42 U.S. Code § 1983 ..............................................................................22

**San Francisco Statutes, Codes & Ordinances**
S.F. Park Code
  § 3.13 ...................................................................................... 13, 27

S.F. Police Code
  § 168 ................................................................................. 12, 13, 27
  § 168(a) ...........................................................................................12
  § 169 ........................................................................... 11, 12, 26, 27

**Rules**
Fed. R. Civ. P.
  Rule 4(a)(1)(A) .................................................................................24
  Rule 12(b)(6) ....................................................................................18

Dist. Ct., N.D., L.R.
  Rule 7-2(a) .......................................................................................24
  Rule 7-11 .........................................................................................25

**INTRODUCTION**

In its extreme reading of *Martin v. City of Boise*, 920 F.3d 584 (9th Cir. 2019) and *Johnson v. City of Grants Pass*, 50 F.4th 787 (9th Cir. 2022), the district court erred by impermissibly expanding those cases' narrow holdings. That foundational error lies at the heart of the preliminary injunction the court ultimately issued. The district court read *Martin* and *Johnson* far too broadly as holding that the Eighth Amendment prohibits enforcement or threatened enforcement of sit/lie/sleep laws unless or until San Francisco has sufficient shelter beds to house all people in the City experiencing homelessness. This would apply even against individuals who have already *refused* San Francisco's offer of adequate shelter. Prior to the injunction San Francisco could make policy decisions about how to make its limited shelter beds available, including by offering them to individuals who are in violation of the City's sit/lie/sleep laws before issuing that individual a citation for refusing to comply with the law. Post-injunction, it cannot. This strips San Francisco of the tools it needs to determine where encampments are set up in the City.

The district court also improperly read the Eighth Amendment as prohibiting focused enforcement of San Francisco's sit/lie/sleep laws to specific blocks in the City and at certain times of day, including those that only prohibit tents in certain locations or at certain times, something *Johnson* explicitly holds is not prohibited.

Plaintiffs' Answering brief leaves unanswered a number of questions that hinder San Francisco's ability to comply with the injunction. Plaintiffs fail to explain how San Francisco is supposed to determine the number of persons in the City experiencing homelessness on a given night. They articulate no position whether the injunction prohibits a silent police presence as a "threat of enforcement," as the district court itself suggested. And Plaintiffs do not explain why the district court's constitutionalization of San Francisco's bag and tag policy was proper. These questions remain unanswered not only because Plaintiffs did not address them, but also because the district court did not clearly state the terms of the injunction in its order and then declined to consider San Francisco's administrative motion for clarification.

Rather than engage on the substance of these issues, Plaintiffs claim San Francisco waived them. But San Francisco raised these arguments with the district court when it opposed Plaintiffs' preliminary injunction motion in November 2022 and has preserved them. Even if it had not, San Francisco presents questions of law this Court has discretion to consider when raised on appeal. Furthermore, it is nonsensical to fault San Francisco for a failure to dispute the terms of an injunction before it is issued.

Plaintiffs' amicus briefs discuss important policy questions arising from the national homelessness crisis, but shed no light on the constitutional questions

presented in this appeal: namely, what constraints does the Eighth Amendment impose on a municipality's response to homelessness.

A preliminary injunction is an extraordinary remedy. Altering San Francisco's response to the homelessness crisis – even where San Francisco's policies were lawful – is an extraordinary result that was not warranted here. The district court upended the way San Francisco engages with persons experiencing homelessness, substituted its own and Plaintiffs' policy decisions for the City's, and placed the City in an untenable position in addressing homelessness, public health and safety, and the rights of disabled persons to use the public right of way. San Francisco is already seeing an impact on the streets where people are now refusing to engage with outreach workers, refusing to comply with requests to relocate, and, refusing shelter offers more frequently. People living on the streets tell San Francisco's outreach workers they are doing these things because the injunction allows them to. Dkt. No. 51-2 (Dodge Decl.), ¶ 6. The district court blocked the City from enforcing state and local laws aimed at dealing with the kinds of problems that arise when encampments occupy large swathes of public land. An order requiring the fourth most populous city in California to fundamentally change its response to a crisis, and preventing it from utilizing voter-approved local laws, must be based on a sound reading of legal precedent and provide sufficient detail to describe the boundaries of the conduct that is and is

not prohibited. The district court's injunction does neither. Accordingly, the injunction should be vacated in its entirety.

## ARGUMENT

### I.    The Overbroad Injunction Far Exceeds The Scope Of *Martin* And *Johnson*

#### A.    The Eighth Amendment Allows Enforcement Of Sit/Lie/Sleep Laws Against Unhoused Persons Who Have Access To Adequate Shelter

Plaintiffs would impose a novel extra-constitutional constraint on San Francisco's enforcement of its sit/lie/sleep laws that finds no support in the Eighth Amendment or in *Martin* or *Johnson*. Plaintiffs argue that every person on San Francisco's streets is "involuntarily homeless," because shelter beds are not available on demand through a self-referral system. Effectively, Plaintiffs' novel argument would make *Johnson*'s "formula" controlling, and forbid *any* enforcement of sit/lie/sleep laws whenever the number of homeless individuals in a jurisdiction exceeds the number of shelter beds, regardless of whether the jurisdiction has offered adequate shelter to an individual facing enforcement.

According to Plaintiffs, individuals are involuntarily homeless if they "do not have practical and voluntary access to shelter." Ans.Br. at 23 (emphasis added); *see also id.* at 29 (claiming that enforcement is proper only against "a person [who] has voluntary, practical access to adequate housing or shelter prior to enforcement."). Plaintiffs argue a shelter offer at an encampment resolution does not count, because a person who refuses the offer will face enforcement if they also

refuse to leave the encampment. According to Plaintiffs, access to shelter under these circumstances is not "voluntary," and therefore, under Plaintiffs' logic, the person who refuses such a shelter offer is still "involuntarily homeless."

Plaintiffs assert "unhoused individuals in San Francisco are 'involuntarily homeless'" because "San Francisco's shelter system is both at capacity and closed to voluntary access." Ans.Br. at 11. Plaintiffs also contend that when the shelter system is "at capacity" and cannot be accessed through self-referrals, any citation issued for violating the sit/lie/sleep laws, even against individuals to whom the City already has offered a shelter bed during an encampment resolution, is unconstitutional, the result of an impermissible "shell game." *Id.* at 40, fn. 5. *See also* Dkt. No. 53, at 8, 17 fn. 3 (Plaintiffs' Opp. to Mtn to Stay).

The district court's ambiguous ruling and opaque reasoning, followed by its refusal to clarify the meaning of "involuntarily homeless" in the injunction, emboldened Plaintiffs' overreach. The district court enjoined enforcement of laws "to prohibit involuntarily homeless individuals from sitting, lying, or sleeping on public property" and the injunction "remain[s] effective as long as there are more homeless individuals in San Francisco than there are shelter beds available." 1-ER-0051. But the district court twice declined San Francisco's request to clarify whether a person who receives and rejects an adequate offer of shelter is

"involuntarily homeless," 1-ER-0042, 2-ER-093, leaving San Francisco to guess what it must do to comply.

The district court relied on San Francisco's "concession" that "'[v]oluntary access to shelter has been functionally inaccessible to unhoused people in San Francisco since the onset of the pandemic in April 2020.' … Put another way, the parties agree that at this time, a homeless San Franciscan who wants a shelter bed has no avenue to ask for one, much less get one." 1-ER-0042-43.

While the district court stated it "need not decide" whether San Francisco's interpretation of "involuntarily homeless" is correct, 1-ER-0042, that was error because San Francisco cannot be made to guess. Creating enough shelter beds to provide shelter to every homeless person within the City's limits would be an enormous undertaking, costing an estimated $1.45 *billion* (3-ER-335), and would require several years. In the meantime, the question of what San Francisco can and cannot do to address street homelessness is of vital importance to the City, its residents, and its businesses, and the ambiguous injunction muddied that question.

No legal authority supports the district court's lack of clarity, or Plaintiffs' rhetorical sleight of hand. Neither *Martin* nor *Johnson* requires self-referral or "voluntary access" before a municipality can enforce its sit/lie/sleep laws against an individual who has refused an adequate shelter offer. In *Martin*, this Court held "the Eighth Amendment prohibits the imposition of criminal penalties for sitting,

sleeping, or lying outside on public property for homeless individuals *who cannot obtain shelter.*" *Martin*, 920 F.3d at 616 (emphasis added). While the Court stated a "jurisdiction cannot prosecute homeless individuals for involuntarily sitting, lying and sleeping in public" if there are more homeless individuals in the jurisdiction than available shelter beds, *id.*, at 617 (cleaned up), the Court further explained:

> That is, as long as there is *no option of sleeping indoors*, the government cannot criminalize indigent, homeless people for sleeping outdoors, on public property, on the false premise they had a choice in the matter.

*Id.* (emphasis added). In other words, the Eighth Amendment does not shield an individual from prosecution for sleeping, lying, or sitting on public property if that individual has access to adequate shelter, but simply declines to use it:

> Naturally, our holding does not cover individuals who *do* have access to adequate temporary shelter, whether because they have the means to pay for it or because it is realistically available to them for free, but who choose not to use it.

*Id.*, 920 F.3d at 617 n.8 (emphasis in original).

Likewise, in *Johnson*, this Court held "the City of Grants Pass cannot, consistent with the Eighth Amendment, enforce its anti-camping ordinances against homeless persons for the mere act of sleeping outside … *when there is no other place in the City for them to go*." *Johnson*, 50 F.4th at 813 (emphasis added). Thus, while this Court in *Johnson* followed what it termed *Martin*'s "formula," it made clear that that "formula" leaves room for enforcement of anti-camping laws

against individuals who have access to adequate shelter. "[I]ndividualized determinations are best made when the City attempts to enforce its ordinances. If it is determined at the enforcement stage that a homeless individual has access to shelter, then they do not benefit from the injunction and may be cited or prosecuted under the anti-camping ordinances." *Id*. at 805 n.23 (citation omitted).

*Martin* and *Johnson* allow an unhoused person to be presented with a choice: accept a shelter offer, leave the encampment, or abide by relevant ordinances and laws. Although Plaintiffs would prefer that shelter beds were also available through a self-referral system, neither the Eighth Amendment nor *Martin* or *Johnson* differentiates between shelter beds made available to an individual in an encampment resolution and beds made available through self-referral.

Plaintiffs mischaracterize *Martin* and *Johnson* when they assert "an overall lack of shelter informs whether individuals have access to shelter or housing," and contend this Court "has held that the primary evidence of 'involuntary homelessness' is a massive shortage of available shelter." Ans.Br. at 31. In *Martin* and *Johnson*, neither city offered shelter and services to the homeless prior to enforcement, as San Francisco does. Neither case, therefore, holds that an overall shortage of shelter beds means that an individual who rejects an adequate shelter offer is "involuntarily homeless" under the Eighth Amendment.

Plaintiffs' professed adherence to *Martin* and *Johnson* cannot obscure the fundamental expansion of the law they advocate here. Although Plaintiffs acknowledge the injunction "only prohibits San Francisco from punishing people who have *no* practical access to shelter," Ans.Br. at 2 (emphasis added), the apparent concession must be understood in light of their insistence that the absence of self-referrals equates to "no practical access." Plaintiffs' reassurance that the district court's injunction "is narrowly tailored to adhere precisely to this Court's holdings in *Martin* and *Johnson*" is illusory. See Ans.Br. at 27. And while Plaintiffs state the district court's consideration of "the overall dearth of shelter" as the factual basis for its injunction "does not mean that the district court defined 'involuntarily homeless' on a collective basis for purposes of the injunction," Ans.Br. at 31, that simply highlights the problem San Francisco faces. The district court did not define its term "involuntarily homeless" *at all* – thereby forcing the City to guess at its peril as to the scope of the injunction.[1]

---

[1] Plaintiffs' amici would impose a further extra-constitutional requirement that San Francisco's available shelter beds be "desirable." Nat'l Homelessness Br., at 25. But no authority supports amici's notion that shelter is "adequate" under the Eighth Amendment only if it accommodates an individual's "daily routine," a preference for non-congregate living, or ensures placement with pets or unmarried partners. *Id.* at 26; DRA Br., at 27-29. To the contrary, a shelter offer is "adequate" under the Eighth Amendment if it provides a place to sleep and avoids conflict with another constitutional guarantee, e.g., religious freedom. *See Martin*, 920 F.3d at 610 ("A city cannot, via the threat of prosecution, coerce an individual to attend religion-based treatment programs consistently with the Establishment Clause of the First Amendment.")

**B.      Encampment Resolutions Have A Limited Geographic Scope**

Plaintiffs never dispute that encampment resolutions have a limited

geographic scope. Ans.Br. at 49-52. Instead, Plaintiffs argue San Francisco has not

identified through legislation any geographic safe harbor from enforcement. *Id.*

But the limited geographic scope of encampment resolutions means they do not

run afoul of *Johnson* or *Martin*, regardless of the adequacy of shelter offers at the

resolutions. As a matter of law, the injunction's prohibition of encampment

resolutions is overbroad.

Plaintiffs' effort to distinguish *Shipp v. Schaaf* is unavailing. Plaintiffs argue

"there was no evidence [in *Shipp*] that the government ever issued citations or

arrests against unhoused individuals," Ans.Br. at 51, but the question of actual

enforcement was irrelevant to *Shipp's* holding. The court held that "even assuming

(as Plaintiffs do) that [enforcement] might occur, remaining at a particular

encampment on public property is not conduct protected by *Martin*." *Shipp v.

Schaaf*, 379 F. Supp. 3d 1033, 1037 (N.D. Cal. 2019). The court did not demand a

specific legislative "safe harbor" like Plaintiffs suggest.

In *Martin*, this Court explained "[e]ven where shelter is unavailable, an

ordinance prohibiting sitting, lying, or sleeping outside at particular times or in

particular locations might well be constitutionally permissible." *Martin*, 920 F.3d

at 617 n.8. "Following *Martin*, several district courts have held that the

government may evict or punish sleeping in public in some locations, provided

there are other lawful places within the jurisdiction for involuntarily homeless individuals to sleep." *Johnson*, 50 F.4th at 812 n.33; *see also Bilodeau v. City of Medford*, No. 1:21-CV-00766-CL, 2022 WL 17853323, at *7 (D. Or. Nov. 29, 2022), *report and recommendation adopted*, No. 1:21 CV 00766-CL, 2022 WL 17849475 (D. Or. Dec. 22, 2022).

Plaintiffs' reliance on *Warren v. City of Chico*, No. 2:21-CV-00640-MCE-DMC, 2021 WL 2894648 (E.D. Cal. July 8, 2021), is misplaced. In *Warren*, defense counsel "conceded that 'a person could never sit, sleep, lie on any property or else they would...be criminally prosecuted...unless the person walked 24 hours a day and had no personal property.'" *Id.* at *2. By contrast, through encampment resolutions, persons experiencing homelessness are simply asked to vacate the immediate area where the resolution is occurring. Resolutions occur at only one location at a time, and San Francisco provides advance notice before any resolution. 5-ER-1050-64, 5-ER-1089-94; 5-ER-1095-1195, 6-ER-1309. Because of their limited geographic scope, resolutions comply with *Martin* and *Johnson*, and the injunction's prohibition of these resolutions was unreasonably overbroad.

### C. San Francisco Police Code Section 169 Prohibits Only Tents And Other Structures, And Expressly Requires A Shelter Offer Before Enforcement

To support the district court's injunction of Section 169, Plaintiffs rely on an inaccurate description of the ordinance. Section 169 does not punish anyone "for possessing a tent." Ans.Br. at 54. Rather, it authorizes enforcement against a

person who has erected a tent on the public sidewalk, after the person has received and rejected a shelter offer. S.F., Cal. Police Code art. 2, § 169.

The Court in *Johnson* did not hold that determining the constitutionality of "fire, stove, and structure prohibitions" "is a highly factual, record-based inquiry." See Ans.Br. at 54. Rather, the district court's wholesale injunction of "fire, stove, and structure prohibitions" was overbroad, and therefore on remand required the district court "to craft a narrower injunction." *Johnson*, 50 F.4th at 812. The Court rejected as "obviously false" the dissent's concern that the opinion established a right to use a tent. *Id.* at 812 n.34.

Section 169 has nothing to do with fires or stoves. As in *Johnson*, Plaintiffs here failed to demonstrate that all tents and structures within the scope of Section 169 constitute "rudimentary precautions," and the district court made no findings on the issue. Furthermore, Section 169 expressly requires a shelter offer prior to enforcement. For these reasons, the trial court overreached and abused its discretion by enjoining Section 169.

### D. The Court Should Not Have Enjoined San Francisco Police Code Section 168

The parties agree Section 168 allows sitting, lying, and sleeping on a public sidewalk overnight. Moreover, Section 168 applies only to *sidewalks*, not "beaches, plazas, public parks, public benches, and other common areas open to the public." S.F., Cal. Police Code art. 2, § 168(a). It therefore complies with

precedent, which disapproved a statutory scheme where homeless persons lacked "a single place where they can lawfully be" at any one time. *Martin*, 920 F.3d at 617. The district court misapplied the law when it enjoined Section 168, because it contains the type of time and geographic limits *Martin* and *Johnson* approved.

Plaintiffs nevertheless argue Section 168 is unconstitutional because when read with San Francisco Park Code Section 3.13, "unhoused individuals would be forced to roam the City for hours each day." Ans.Br. at 53. Plaintiffs exaggerate.

Section 3.13 makes it unlawful to "remain in any park for the purpose of sleeping" from 8:00 p.m. to 8:00 a.m. S.F., Cal. Park Code art. 3, § 3.13. The district court rejected Plaintiffs' motion to enjoin enforcement of Section 3.13 because Plaintiffs failed to show anyone was ever cited for violating it. 1-ER-50. Moreover, a person does not violate Section 3.13 if they "accept Social Services offered by the City" within 30 hours after receiving a citation. S.F., Cal. Park Code art. 3, § 3.13. Even ignoring the absence of enforcement evidence, and ignoring the opportunities to cure built into section 3.13, there are just three hours in the evening and one hour in the morning when a person is not allowed to sleep on sidewalks or in parks.

Furthermore, sidewalks and parks are not the only public property in San Francisco. Neither section limits access to beaches, plazas, or other public areas. San Francisco's codes are thus unlike *Warren*, on which Plaintiffs rely, in which

counsel "conceded that a person could never sit, sleep, [or] lie on any property or else they would be criminally prosecuted unless the person walked 24 hours a day and had no personal property." *See Warren*, 2021 WL 2894648, at *2 (cleaned up).

> ### E. The Challenged Injunction Hinges On The Number Of Persons Experiencing Homelessness In The City

Plaintiffs argue that counting the number of shelter beds and homeless people in San Francisco is not unworkable, without acknowledging San Francisco's homeless population and shelter system are orders of magnitude larger than Boise's or Grants Pass's, which this Court addressed in *Martin* and *Johnson*. The most recent 2022 Point In Time ("PIT") count identified 7,754 people experiencing homelessness in San Francisco. The difficulty of accurately counting many thousands of unsheltered people is significantly more complicated than the 600-900 in Boise and Grants Pass. *Blake v. City of Grants Pass*, No. 1:18-CV-01823-CL, 2020 WL 4209227, at *7 (D. Or. July 22, 2020), *aff'd in part, vacated in part,* 50 F.4th 787 (9th Cir. 2022) (recognizing *Martin* concerned 867 people in Ada County and *Johnson* concerned 602 people). San Francisco's annual shelter placements in Fiscal Year 2021 *alone* (2,652 placements) eclipse the entire homeless population of both Grant's Pass and Boise, combined. AOB at 31-36. Expecting San Francisco to keep daily track of a fluctuating and large homeless population demands the impossible.

Plaintiffs are incorrect that San Francisco does not need to know the number of people experiencing homelessness each night. The injunction "remain[s] effective as long as there are more homeless individuals in San Francisco than there are shelter beds available." 1-ER-0051. San Francisco is entitled to know when the injunction expires. Relying on an imprecise biennial count is not a workable standard for San Francisco or any major city.

### F. The District Court And Plaintiffs Created Uncertainty About What The Injunction Means By Threats To Enforce

Plaintiffs ignore the main reason San Francisco needs clarification of the phrase "threats to enforce": post-injunction statements by Plaintiffs and the district court. None of the cases on which Plaintiffs rely indicate the parties had differing understandings about how "threats" should be interpreted in their case. Here, the conflict is clear because the district court, Plaintiffs, and Plaintiffs' amici all contend a silent police presence may constitute a prohibited "threat" to enforce.

Two weeks after the injunction issued, Plaintiffs filed a motion alleging noncompliance. 2-ER-224-314. Plaintiffs complained of a "heavy police presence" at encampment resolutions, and that "SFPD is still among the first to arrive." 2-ER-307. The district court expressed a "big concern" that the number of officers created a "reasonably perceived threat" of enforcement. 2-ER-082-83.

Constraining San Francisco's discretion to deploy sufficient officers to protect the safety of its homeless outreach staff exceeds the scope of *Martin* and

*Johnson*. To enjoin mere police presence exceeds the bounds of the Eighth
Amendment, where "substantive limits as to what the government may criminalize
are … to be applied sparingly." *Martin*, 920 F.3d at 615 (cleaned up). Despite this,
Plaintiffs and their amici continue to claim police presence alone constitutes a
threat of enforcement. NPAP Br. at 5 ("shows of force through officer presence"
can "amount to a threat of enforcement."); *id*. at 8 ("excessive police presence is
threatening"). Plaintiffs' amici also incorrectly assert "[t]he sole purpose of police
presence at encampment[s] . . . is to . . . issue citations to unsheltered people
lodging in public spaces." *Id*. at 12. In fact, the record shows SFPD officers
provide safety and security for all involved, "respond to questions from the public,
[and] deescalate any conflicts that may arise." 5-ER-1036.

    San Francisco's post-injunction Enforcement Bulletin does not cure the
injunction's overreach and vagueness. The Enforcement Bulletin reflects San
Francisco's cautious response to the injunction's overbroad and uncertain scope,
which the district court declined to clarify in response to San Francisco's
administrative motion for clarification. Plaintiffs did not, in their Answering Brief,
disclaim the view that mere police presence can constitute a threat that violates the
injunction. Nor did Plaintiffs articulate what they believe is the supposedly
unambiguous definition of a "threat" in the injunction.

## II. The Court Can And Should Consider The Amici Arguments Supporting San Francisco

The arguments presented by amici the League of California Cities, the California State Association of Counties, and the International Municipal Lawyers Association ("Local Governments") are properly before the Court. "As the Supreme Court has made clear, it is claims that are deemed waived or forfeited, not arguments." *Allen v. Santa Clara Cnty. Corr. Peace Officer Assoc.*, 38 F.4th 68, 71 (9th Cir. 2022) (citation omitted). The City adopts the arguments advanced in the Local Governments' brief. Those arguments concern matters of law and are properly before this Court. *See United States v. Van Winrow*, 951 F.2d 1069, 1072 (9th Cir. 1991) ("Because Winrow states in his brief that he wishes to adopt these arguments as his own, and because they present pure issues of law, we will consider them here"); *see also United States v. Gementera*, 379 F.3d 596, 607 (9th Cir. 2004) (citation omitted) ("The [Ninth Circuit] has . . . addressed purely legal questions [raised by amici] when the parties express an intent to adopt the arguments as their own.").

The Local Governments explained that the district court issued an overbroad class-wide injunction in this individual action. Local Governments' Br. at 11-16. The parties and Local Governments agree an injunction "should be no more burdensome to the defendant than necessary to provide complete relief to plaintiffs." *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979), *overruled on other*

*grounds by Daves v. Dallas Cnty.*, 22 F.4th 552 (5th Cir. 2022); Ans.Br. at 56; Local Governments' Br. at 12. Yet Plaintiffs fail to explain how a narrower injunction would be inadequate. Generally, an injunction "should be limited to apply only to named plaintiffs where there is no class certification" though an injunction is not *necessarily* overbroad when it benefits non-parties. *Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1501-02 (9th Cir. 1996) (cited by Plaintiffs).

A handful of cases with citywide injunctions does not justify the injunction here. *See* Ans.Br. at 57. The district court did not sufficiently explain why it was necessary for the injunction in this case to extend beyond the named parties. And because the district court and the parties agree the City's policies and statutes are constitutional, a blanket injunction prohibiting their enforcement is improper. *Cf. Garcia v. City of Los Angeles*, 481 F. Supp. 3d 1031, 1041 (C.D. Cal. 2020) ("if the arguments and evidence show that a statutory provision is unconstitutional on its face, … an injunction prohibiting its enforcement is proper.") (cleaned up).

The Local Governments also demonstrated Plaintiffs' failure to satisfy *Monell*'s criteria for municipal liability. Local Governments' Br. at 4-11. The cases Plaintiffs rely on do not help them, because the posture of those cases imposed a less demanding legal standard on the plaintiffs. In *Cooper-Levy v. City of Miami*, the court denied plaintiffs' 12(b)(6) motion, determining only that plaintiffs'

allegations survived to discovery. 2022 WL 17477009, at *4-5 (S.D. Fla. Dec. 6, 2022). In two cases, the court denied defendants' summary judgment motion, determining the evidence created genuine issues of material fact. *Menotti v. City of Seattle*, 409 F.3d 1113, 1148 (9th Cir. 2005); *Lawman v. City & Cnty. of San Francisco*, 159 F. Supp. 3d 1130, 1146-47 (N.D. Cal. 2016). And in *Redman*, the defendant was not entitled to a directed verdict, because a jury "*could* find that the jail officials were acting pursuant to County policies or customs" related to the prison conditions at issue there, not that such a finding was required or even likely. *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1445-1446 (9th Cir. 1991), *abrogated on other grounds by Farmer v. Brennan,* 511 U.S. 825 (1994) (emphasis added).

To survive dismissal, summary judgment, or a directed verdict, the plaintiff faces no burden of proof. In this case, Plaintiffs had the obligation to present sufficient evidence to demonstrate a likelihood they could establish *Monell* liability at trial. As the Local Governments showed, Plaintiffs' evidence fell short. It was therefore legal error for the district court to implicitly conclude Plaintiffs met *Monell*'s requirements. *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996); *Ulrich v. City & Cnty. of San Francisco*, 308 F.3d 968, 984–85 (9th Cir. 2002) (discussing what plaintiffs must show to demonstrate a constitutional violation from a defendant's custom or practice).

### III. Plaintiffs Admit San Francisco's Bag And Tag Policy Exceeds The Fourth Amendment's Requirements

Plaintiffs do not dispute San Francisco's bag and tag policy includes conditions and requirements entirely unconnected to Plaintiffs' Fourth Amendment rights.[2] They instead argue the injunction was nevertheless proper because the district court had discretion to order relief beyond what the constitution requires. Ans.Br. at 58-59. Plaintiffs overstate the law. Plaintiffs' Ninth Circuit authority provides no support for Plaintiffs' proposition that an injunction against violating a written municipal policy that exceeds constitutional requirements is proper. *See Melendres v. Arpaio*, 784 F.3d 1254, 1265 (9th Cir. 2015) (held public entity's policy unconstitutional); *Roman v. Wolf*, 977 F.3d 935, 942 (9th Cir. 2020) (none of the requested relief enjoined public entity from violating its own policy); *Stone v. City & County of San Francisco*, 968 F.2d 850, 861 (9th Cir. 1992) (discussing compliance with consent decree agreed to by all parties). In Plaintiffs' remaining cases, none of the defendant public entities challenged the injunction on the basis San Francisco raises here. *See Women Prisoners of D.C. Dep't of Corr. v. D.C.*, 93 F.3d 910, 930 (D.C. Cir. 1996) (defendant argued the court "has no business directing compliance with" local law); *Hanna v. Peters*, No. 2:21-cv-00493-SB, 2022 WL 833165, at *6 (D. Or. Mar. 21, 2022) (no discussion of argument that the

---

[2] The City's opening brief argued in the alternative that if its bag and tag policy did not exceed the Fourth Amendment's requirements, the injunction was an improper "obey the law" injunction. AOB at 56. This argument is moot since Plaintiffs agree the City's policy exceeds constitutional requirements.

policy exceeds what the constitution required); *Benjamin v. Fraser*, 156 F. Supp. 2d 333, 344 (S.D.N.Y. 2001) (same).

Plaintiffs claim San Francisco faces no harm from the injunction because the City can move in the district court to amend the injunction if San Francisco wishes to revise its written policies. Ans.Br. at 61. But this suggestion does not address San Francisco's primary harm from the injunction: by "improperly conflat[ing] a violation of department policy with a violation of the Constitution," the district court opened San Francisco up to claims that any operational deviation no matter how small—now violates not only a court order, but the Constitution. AOB at 54-55.

## IV.   San Francisco Preserved Its Arguments For Appeal

Unable to prevail on the merits, Plaintiffs attempt to avoid the issues on appeal through assertions of waiver. Ans.Br. at 26-27, 46-49. Plaintiffs amplify the district court's erroneous enforcement of waiver. *See* 1-ER-0049; 3-ER-385-86.

As Plaintiffs acknowledge, this Court may properly consider arguments, even if not raised below, "if the issue 'is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed.'" Ans.Br. at 21 (quoting *A-1 Ambulance Serv., Inc. v. Cnty. of Monterey*, 90 F.3d 333, 339 (9th Cir. 1996)). In *A-1 Ambulance*, this Court held that Monterey County had waived its "contract argument." 90 F.3d at 339. The

Court explained it was enforcing the waiver rule because three circumstances coexisted: the county never offered to the district court any case law relevant to its contract argument, the county never articulated its contract argument in the district court, and "the possibility that … the merits of the contract argument [could not] be resolved without further hearings before the district court." *Id*. at 338-39 n.4.

Moreover, it is claims, not arguments that are waived on appeal. "Appellants can make any argument in support of their claim on appeal – they are 'not limited to the precise arguments they made below.'" *Allen*, 38 F.4th at 71 (citation omitted). In *Allen,* non-union public employees asserted the union and the county improperly deducted from their paychecks agency fees for collective bargaining. The district court had dismissed the employees' claims because the union and county had deducted the agency fees in good faith reliance on earlier case law. *Id.* On appeal, the employees presented a new argument that a separate good faith analysis applies to government entities, making the county liable even if the good faith defense was available to the union. In the district court, the employees had argued only that the good faith defense was categorically unavailable to *any* defendant in a § 1983 action to return property. The employees had not waived their new county-specific argument, because it supported their claim in the district court that defendants could not invoke the good faith defense. *Id.* The rule is well-established that a new argument on appeal is proper to support a claim that was

presented below. *See also, e.g.*, *E.V. v. Robinson, Jr.*, 906 F.3d 1082, 1095 n.12 (9th Cir. 2018); *United States v. Lloyd*, 807 F.3d 1128, 1175 (9th Cir. 2015); *Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1243 (9th Cir. 2014).

All the arguments Plaintiffs challenge as waived support San Francisco's claim that it complies with the Eighth Amendment. In any event, the arguments were actually presented below and/or raise no new factual issues.

**"Involuntarily Homeless."** San Francisco fully presented to the district court the argument that its enforcement policies comply with the Eighth Amendment because San Francisco offers shelter to homeless individuals before enforcing its sit/lie/sleep laws against them. And to support its position San Francisco expressly relied on the controlling case law, i.e., *Martin and Johnson*, in the district court. 5-ER-1024 ("San Francisco's policy of offering shelter before requiring any unhouse[d] person to vacate public property meets the requirements of the Eighth Amendment."), 5-ER-1026 ("Encampment occupants in San Francisco asked to vacate public property 'have access to adequate temporary shelter,' even if many 'choose not to use it,'" quoting *Martin*), 5-ER-1032 ("Since HSOC indeed offers shelter to campers, any police engagement at an encampment resolution complies fully with *Martin* and *Johnson*.").

Since San Francisco raised the issue below and presented the relevant case law to the district court, this Court should consider on appeal San Francisco's

argument that a person who refuses an adequate shelter offer is not involuntarily homeless. [3] In any event, the issue presents a purely legal question, making it amenable to review even if the Court identifies any deficiency in San Francisco's presentation to the district court.

Plaintiffs further criticize San Francisco for not obtaining from the district court a clarification of the injunction's use of the term "involuntarily homeless," but San Francisco did everything it could do to get clarity from the district court. San Francisco promptly sought clarification just 10 days after receiving the order, notwithstanding the intervening Christmas and New Year's holidays. Because the 30-day deadline for a notice of appeal is shorter than the 35-day briefing schedule for a noticed motion, San Francisco could not simply file a noticed motion for clarification after the injunction issued. Instead, San Francisco presented its request for clarification through an administrative motion and, in the alternative, requested "an order shortening time and imposing page limits" to allow the clarification motion to be heard before the appeal deadline. *See* 3-ER-321; Compare N.D. Local Rule 7-2(a), and Fed. R. Civ. P. 4(a)(1)(A). The district court denied the motion for clarification on procedural grounds, and ignored the request to shorten time

---

[3] The district court's insistence that San Francisco failed to preserve its argument that individual offers of adequate shelter comply with *Martin* and *Johnson* is irreconcilable with the court's citation in its injunction order to the exact argument in San Francisco's brief opposing Plaintiffs' motion. See 1-ER-0038.

altogether, although requests to shorten time are plainly the proper subject of an administrative motion. 2-ER-075-77, 093; N.D. Local Rule 7-11.

But the district court's rulings prevented San Francisco from obtaining any clarification before the deadline for a notice of appeal. And, after San Francisco filed a notice of appeal, it was too late for the district court to clarify or alter the scope of its order. "[T]he filing of a notice of interlocutory appeal divests the district court of jurisdiction over the particular issues involved in that appeal." *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 886 (9th Cir. 2001). Accordingly, there was no way San Francisco could obtain clarification from the district court before filing its notice of appeal, and jurisdictional constraints prohibited San Francisco from seeking clarification in the district court while its appeal was pending. The district court's refusal to address San Francisco's administrative motion for clarification and in the alternative for expedited briefing cannot deprive San Francisco of its opportunity to seek relief in this Court.[4]

---

[4] Plaintiffs assert nonsensically that San Francisco was required to argue the scope of the injunction "in [its] opposition to Plaintiffs' preliminary injunction motion," before San Francisco could possibly know the injunction's terms. *See* Ans.Br. at 26. See also 1-ER-0049; 3-ER-385-86. Nothing in *Barrientos v. 1801-1825 Morton LLC*, 583 F.3d 1197 (9th Cir. 2009), on which Plaintiffs rely, suggests that an appellant must challenge an injunction's scope before the injunction is issued.

**Threats to Enforce.** Plaintiffs assert the Court should not consider San Francisco's argument that the injunction's prohibition of "threats to enforce" is improperly vague. Ans.Br. at 41. But the reason for that vagueness challenge came into focus only during the January 12, 2023 hearing, when the district court first suggested that the mere silent presence of police officers while outreach workers offer shelter and services could constitute a "threat to enforce." 2-ER-082-83. In light of the impending deadline to appeal the injunction, just 11 days later, and the district court's refusal to consider San Francisco's administrative motion, San Francisco had no reasonable opportunity to seek further clarification from the district court before its notice of appeal divested the district court of jurisdiction.

**Section 169.** Plaintiffs contend San Francisco failed to present below its argument that enjoining San Francisco Police Code Section 169 exceeds the bounds of *Martin* and *Johnson*. Ans.Br. at 54. But Section 169 prohibits tents and other structures on public property. And San Francisco clearly asserted in its preliminary injunction opposition in the district court: "The Eighth Amendment does not require San Francisco to allow *any* tent on its sidewalks, regardless of shelter availability." 5-ER-1032-33 (emphasis in original, citing *Johnson*, 50 F.4th at 812 n.34). Because San Francisco asserted its right to enforce against unauthorized tents and other structures on public property, it fairly presented to the district court its argument that an injunction against Section 169 exceeds the

Eighth Amendment's scope. In any event, the propriety of enjoining Section 169 raises pure questions of law. The *Johnson* majority forcefully rejected as "obviously false" the suggestion they had established a" right to use … a tent." *Johnson*, 50 F.4th at 812 n.34.[5]

**Section 168.** Likewise, Police Code Section 168 presents pure questions of law this Court should review on appeal. Section 168 prohibits sitting and lying on a public sidewalk between 7:00 a.m. and 11:00 p.m. *See* AOB at 42. Section 168 allows sleeping on sidewalks overnight. Determining whether Section 168, in conjunction with San Francisco Park Code section 3.13, complies with *Martin* and *Johnson* presents a pure question of law, which is amenable to review whether or not San Francisco framed this statutory construction question to the district court. Judicial economy counsels for this Court to address the propriety of the Section 168 injunction as the Court assesses the other challenged provisions of the injunction.

---

[5] If the Court accepts Plaintiffs' reading of *Johnson* that factual questions exist whether a tent or other structure may constitute a "rudimentary precaution[ ]" under *Johnson*, see Ans.Br. at 54, then it is Plaintiffs, not San Francisco, who waived the issue. In *Johnson*, the absence of a factual record whether "fire, stove, and structure prohibitions" constituted "rudimentary precautions" required reversal and remand. *Johnson*, 50 F.4th at 812. There was no waiver by defendant. Moreover, "[g]enerally speaking, when confronting a constitutional flaw in a statute, we try to limit the solution to the problem. We ... enjoin only the unconstitutional applications of a statute while leaving other applications in force." *Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 328-29 (2006) For these reasons, the district court's complete prohibition against enforcement of Section 169 is overbroad as a matter of law.

**Limited Geographic Scope.** Plaintiffs urge this Court to refuse to consider whether the district court's injunction of encampment resolutions is overbroad. Ans.Br. at 49. But the factual record is fully developed and undisputed that each resolution involves only a discrete defined geographic area. 5-ER-1050-64, 5-ER-1089-94; 5-ER-1095-1195, 6-ER-1309. San Francisco presents a pure legal question whether encampment resolutions – even assuming they involve enforcement of sit/lie/sleep laws without adequate offers of shelter – still violate *Martin* and *Johnson* in light of their limited geographic scope.

**Workability.** Plaintiffs assert this Court should ignore San Francisco's concern the injunction is unworkable. Ans.Br. at 46. All parties and Plaintiffs' amici agree PIT counts are labor intensive, inaccurate and available only biennially. Yet PIT counts are the only available metric for estimating the number of homeless individuals in a municipality. Thus, the factual underpinnings of San Francisco's workability concern are fully developed and undisputed.

## CONCLUSION

For the above-stated reasons, the Court should vacate the injunction and remand for further proceedings.

Dated: April 25, 2023

Respectfully submitted,

DAVID CHIU
City Attorney
YVONNE R. MERÉ
WAYNE SNODGRASS
MEREDITH B. OSBORN
JAMES M. EMERY
EDMUND T. WANG
KAITLYN M. MURPHY
RYAN C. STEVENS
MIGUEL A. GRADILLA
Deputy City Attorneys


By: s/James M. Emery
    JAMES M. EMERY

Attorneys for Defendants and Appellants
CITY AND COUNTY OF SAN
FRANCISCO; SAN FRANCISCO POLICE
DEPARTMENT; SAN FRANCISCO
DEPARTMENT OF PUBLIC WORKS;
SAN FRANCISCO DEPARTMENT OF
HOMELESSNESS AND SUPPORTIVE
HOUSING; SAN FRANCISCO FIRE
DEPARTMENT; SAN FRANCISCO
DEPARTMENT OF EMERGENCY
MANAGEMENT

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** 23-15087

I am the attorney or self-represented party.

This brief contains 6,723 words, excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

☒ complies with the word limit of Cir. R. 32-1.

☐ is a cross-appeal brief and complies with the word limit of Cir. R. 28.1-1.

☐ is an amicus brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

☐ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

☐ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one):*

    ☐ it is a joint brief submitted by separately represented parties;

    ☐ a party or parties are filing a single brief in response to multiple briefs; or

    ☐ a party or parties are filing a single brief in response to a longer joint brief.

☐ complies with the length limit designated by court order dated _____.

☐ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

Signature s/James M. Emery       Date April 25, 2023

*(use "s/*[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

## <u>CERTIFICATE OF SERVICE</u>

I, Pamela Cheeseborough, hereby certify that I electronically filed the following document with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECFsystem on April 25, 2023.

### APPELLANTS' REPLY BRIEF
### (PRELIMINARY INJUNCTION APPEAL)

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Executed April 25, 2023, at San Francisco, California.

*s/* Pamela Cheeseborough
Pamela Cheeseborough