No. 23-15087

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

COALITION ON HOMELESSNESS; TORO CASTAÑO; SARAH CRONK; JOSHUA DONOHOE; MOLIQUE FRANK; DAVID MARTINEZ; TERESA SANDOVAL; and NATHANIEL VAUGHN,

*Plaintiffs-Appellees,*

v.

CITY AND COUNTY OF SAN FRANCISCO, et al.,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Northern District of California
No. 4:22-cv-05502-DMR
Hon. Donna M. Ryu

---

## OPPOSITION TO MOTION
## TO STAY THE ISSUANCE OF THE MANDATE

---

John Thomas H. Do, SBN 285075
Neil K. Sawhney, SBN 300130
ACLU FOUNDATION OF NORTHERN
CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
(415) 293-6333
*jdo@aclunc.org*
*nsawhney@aclunc.org*

*Counsel for Plaintiffs-Appellees*

## INTRODUCTION

The City of San Francisco's motion to stay the mandate is centered on a flawed premise: that it is more judicially efficient for this Court, as opposed to the district court, to apply intervening Supreme Court authority that potentially bears on the plaintiffs' claims in this case. But that is contrary to what this Court has repeatedly held: The proper role is for the district court to apply any "new legal standard in the first instance." *Animal Legal Def. Fund v. United States Food & Drug Admin.*, 790 F. App'x 134, 135 (9th Cir. 2020); *see Strategic Diversity, Inc. v. Alchemix Corp.*, 666 F.3d 1197, 1206 (9th Cir. 2012) (citing cases). This Court, by contrast, is "a court of review, not first view." *Roth v. Foris Ventures, LLC*, 86 F.4th 832, 838 (9th Cir. 2023). Indeed, as the panel in this very appeal explained, that "two-leveled consideration" reflects "the usual relationship between trial and appellate courts" in our judicial system. *Ecological Rts. Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1154 (9th Cir. 2000); *see* Slip. Op. at 17 (Dkt. 89-1).

For this reason, the City's motion should be denied, and this Court's mandate should be issued so that the district court can resume its full authority over the proceedings. As this Court is aware, this is an interlocutory appeal from an order issuing a preliminary injunction on the plaintiffs' Eighth Amendment *and* Fourth Amendment claims—the latter of which will not be impacted by the Supreme Court's upcoming decision in *City of Grants Pass v. Johnson*, No. 23-175. If *Grants Pass* does materially affect the Eighth Amendment claim, then the City can raise that issue before the district court

1

in a motion to modify the injunction. The City does not explain why that ordinary course of action would prejudice it in any way. A stay is therefore not warranted.

The City also cannot satisfy Federal Rule of Appellate Procedure 41(d)'s standard for a stay of the mandate pending a petition for certiorari. This Court's opinion rested on the City's waiver of arguments distinguishing this case from this Court's precedent. There is no reasonable probability that the Supreme Court would grant certiorari to address that case-specific waiver determination. Nor can the City establish good cause for staying the mandate. The time for filing the City's cert petition runs not from the issuance of the mandate, but from this Court's judgment or denial of rehearing—the deadline for which this Court recently extended. *See* Clerk Order (Jan. 25, 2024). Aside from that, the City does not contend that it will suffer *any* prejudice or hardship in the absence of a stay. Accordingly, the City's motion should be denied.

## ARGUMENT

The grant of a motion to stay the mandate is "is far from a foregone conclusion." 16A Wright & Miller, *Federal Practice and Procedure* § 3987.1 (3d ed.1999); *see* 9th Cir. L-R. 41-1 (motions to stay "will not be granted as a matter of course"). A party seeking to stay the mandate pending the filing of a petition for a writ of certiorari must show that its "petition would present a substantial question and set forth good cause for a stay." Fed. R. App. P. 41(d)(1). Even where the movant has satisfied Rule 41(d)'s standard, the decision whether to grant a stay of the mandate "is entrusted to [this Court's] sound discretion." *Bryant v. Ford Motor Co.*, 886 F.2d 1526, 1528 (9th Cir. 1989).

**I.** **There is no practical or equitable basis for staying the mandate.**

As the party seeking a stay, the City "has the burden to 'make out a clear case of hardship or inequity in being required to go forward.'" *DeMartini v. Johns*, 693 F. App'x 534, 538 (9th Cir. 2017) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)). It has failed to discharge that burden here. In fact, the City cannot establish *any* prejudice that it will suffer if this Court denies its motion to stay the mandate. It does not even try to do so in its motion, and for good reason: As it admits, the preliminary injunction—and the City's obligation to adhere to the injunction—will remain "intact" regardless of whether the mandate issues. *See* Mot. 5.

The only basis that the City even suggests for granting the stay is "[t]he economical use of judicial resources." *Id.* In its view, a stay of the mandate is warranted simply to allow the City to wait for the Supreme Court to issue its decision in *City of Grants Pass v. Johnson*, No. 23-175, before filing its petition for writ of certiorari. But the time within which the City has to file its cert petition runs "not from the issuance date of the mandate," but from the later of this Court's entry of judgment or denial of a timely petition for rehearing. S. Ct. R. 13(3). By granting the City's motion to extend the deadline for its petition for rehearing, the Court has given the City the very relief that it seeks. There is thus no reason to delay issuance of the mandate.

More importantly, the City's judicial-economy argument gets things exactly backwards. This appeal is from a preliminary injunction—not a final judgment where the only realistic prospect for relief is certiorari. If the Supreme Court's eventual

decision in *Grants Pass* calls into question the legal analysis underlying the district court's preliminary-injunction order, the proper course would be for the City to raise that argument *in the district court*—presumably by a motion to modify the injunction.[1] And in the unlikely event that the district court failed to properly apply *Grants Pass*, the City could then appeal that decision to this Court.

As the panel here recognized, this "two-leveled consideration" reflects "the usual relationship between trial and appellate courts." *Ecological Rts. Found. v. Pac. Lumber Co.*, 230 F.3d 1141, 1154 (9th Cir. 2000). "Our judicial system generally assumes that consideration of an issue at both the trial court and appellate court level is more likely to yield the correct result, because the issue will be more fully aired and analyzed by the parties, because more judges will consider it, and because trial judges often bring a perspective to an issue different from that of appellate judges." *See id.* Indeed, even if the Court stayed the mandate until the Supreme Court resolved *Grants Pass*, it likely would just remand to the district court, because it typically "decline[s] to apply the new legal standard in the first instance." *Animal Legal Def. Fund v. United States Food & Drug Admin.*, 790 F. App'x 134, 135 (9th Cir. 2020); *see Strategic Diversity, Inc. v. Alchemix Corp.*, 666 F.3d 1197, 1206 (9th Cir. 2012) (citing cases "noting the prudence of remand in light of recent Supreme Court authority").

---

[1] Of course, as the City acknowledges, *Grants Pass* at most will require the district court to reconsider its analysis of the plaintiffs' Eighth Amendment claim; it will have no impact on the plaintiffs' Fourth Amendment claim, an independent and separate basis for the preliminary injunction.

Thus, the *actual* efficient allocation of judicial resources would be to issue the mandate in the ordinary course and remand the case to the district court. That would allow the district court to clarify the preliminary injunction in accordance with the instructions this Court provided in its memorandum disposition. It would also enable the district court to, if needed, modify its order to respond with any factual developments on the ground. *See Prudential Real Est. Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 880 (9th Cir. 2000) ("A district court lacks jurisdiction to modify an injunction once it has been appealed except to maintain the status quo among the parties.").[2] And, in the event that the Supreme Court's decision in *Grants Pass* required significant change to the preliminary injunction, issuing the mandate now would empower the district court to do so in the first instance. For those reasons alone, the City's motion to stay the mandate should be denied.

## II. The City has failed to satisfy Rule 41(d)'s requirements.

The motion to stay the mandate should also be denied because the City has not demonstrated that its "petition would present a substantial question and set forth good cause for a stay." Fed. R. App. P. 41(d)(1).

---

[2] Even if issuance of the mandate is stayed, the district court maintains jurisdiction to "enforce" the injunction. *Kelley v. C.I.R.*, 45 F.3d 348, 351 n.5 (9th Cir. 1995); *see also* Fed. R. Civ. Proc. 62(d); *Armstrong v. Brown*, 732 F.3d 955, 959 (9th Cir. 2013) (noting that the district court acted properly while appeal was pending "to preserve the status quo and protect plaintiffs' rights in direct response to defendants' repeated and willful non-compliance with its earlier orders").

**1.** "To start, the standard for presenting a 'substantial question' is high." *United States v. Silver*, 954 F.3d 455, 458 (2d Cir. 2020). At a minimum, the City must show "a 'reasonable probability' that four justices will vote to grant certiorari." *Id.* (quoting *Maryland v. King*, 567 U.S. 1301, 1301 (2012) (Roberts, C.J., in chambers)); *see also, e.g.*, *Senne v. Vill. of Palatine, Ill.*, 695 F.3d 617, 619 (7th Cir. 2012) (Ripple, J., in chambers); Wright & Miller, *Federal Practice and Procedure*, *supra*, § 3987.1.

The City cannot make that showing here. That some of the plaintiffs' *claims* turn on the application of *Martin v. City of Boise*, 920 F.3d 584 (9th Cir. 2019), and *Johnson v. Grants Pass*, 72 F.4th 868 (9th Cir. 2023), does not mean that this Court's *holding* presents the same or comparable questions as those decisions. Far from it: This Court affirmed the district court's order because the City had waived its main arguments distinguishing this case from *Martin* and *Johnson*. Indeed, the panel majority explicitly and repeatedly made clear that waiver was the primary basis for its decision. *See, e.g.*, Slip Op. 8–9, 11–12, 14, 16–17. The dissent, too, emphasized that the majority reached no substantive holding but "simply conclude[d] that San Francisco's arguments on appeal were waived." Slip Op. 20 (Bumatay, J., dissenting) (explaining that "the district court's legal rulings are not the law of our court").

There is no reasonable probability that the Supreme Court would grant certiorari to review that mundane and case-specific holding. *See* Carolyn Shapiro, *The Limits of the Olympian Court: Common Law Judging Versus Error Correction in the Supreme Court*, 63 Wash. & Lee L. Rev. 271, 285 (2006) (noting that the Court is unlikely to grant review where

there has been "waiver of a key argument"). After all, the Supreme Court grants certiorari either to resolve a conflict among the lower courts or to settle an important unsettled question of federal law. *See* S. Ct. R. 10. But the only cert-worthy questions that the City identifies in motion (at 3–4) are the Eighth Amendment issues presented in *Grants Pass*. Of course, once the Supreme Court issues its decision in *Grants Pass*, it will *already* have settled those issues. Simply put, it is not reasonably probable that the Supreme Court would grant certiorari to review questions not presented by this Court's opinion—and that, in any event, will have already been decided in a separate case.[3]

To be sure, the City may be correct that the Supreme Court's decision in *Grants Pass* might affect its arguments about the viability of the plaintiffs' legal theories under the Eighth Amendment. But it will have no bearing on the City's arguments for *granting certiorari*—which is all that Rule 41(d) is concerned with. If anything, this shows why issuing the mandate is the proper course of action here. It will allow the City to raise its arguments about the impact of *Grants Pass* on this case to the tribunal best equipped to resolve them: the district court.

---

[3] The City's cert petition would be unlikely to succeed for additional reasons. For example, the City recently argued in the district court that the plaintiffs lack Article III standing. *See* D. Ct. Dkt. 204 at 10–11, 18. Although the plaintiffs strongly disagree, that argument poses a significant barrier to certiorari. *See* David C. Thompson & Melanie F. Wachtell, *An Empirical Analysis of Supreme Court Certiorari Petition Procedures: The Call for Response and the Call for the Views of the Solicitor General*, 16 Geo. Mason L. Rev. 237, 281 n.188 (2009) (describing "a lack of standing" as a "vehicle problem"); *see also* Arthur D. Hellman, *By Precedent Unbound: The Nature and Extent of Unresolved Intercircuit Conflicts*, 56 U. Pitt. L. Rev. 693, 713 (1995) ("[F]or most of the Justices, most of the time, the presence of a 'vehicle' problem will be a sufficient reason to deny review.").

**2.** The City also fails to establish good cause for a stay. "A stay is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 433 (2009). Here, as explained above, the City has not shown that it would suffer *any* injury in the absence a stay, let alone an "irreparable" one.

The only harm even suggested by the City—that it would be inefficient to have to prepare a petition for certiorari now, rather than in a few months—has been eliminated by this Court granting an extension for the petition for rehearing. Moreover, this Court has consistently held that equitable relief like a stay cannot be justified merely because a party would otherwise have to "spend resources" in the litigation. *Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, 736 n.20 (9th Cir. 2017); *see e.g.*, *Bakersfield City Sch. Dist. of Kern Cnty. v. Boyer*, 610 F.2d 621, 626 (9th Cir. 1979) (noting that "time and expenses due to litigation are not enough" to authorize "judicial intervention"). In any event, as one of the City's own cases explains (*see* Mot. 6), it is "not without a remedy"; the City can try to "seek a stay of the proceedings in the district court" to "facilitate" appellate review. *Ellis v. U.S. Dist. Ct. for W. Dist. of Washington (Tacoma)*, 360 F.3d 1022, 1023 (9th Cir. 2004). Indeed, it has done precisely that. *See* D. Ct. Dkt. 204.

On the other side of the scale, staying the issuance of the mandate would work some measure of harm to the plaintiffs and judicial economy. Although a stay would not prevent the plaintiffs from enforcing the preliminary injunction, it could cast a cloud over the district court's ability to nimbly respond to factual developments and to adjust

the injunction in response to the plaintiffs' non-Eighth Amendment claims—which will not be affected in any way by *Grants Pass*.

More importantly, as explained, the City's motion would deny the plaintiffs of the benefit of the "two-leveled consideration" guaranteed by our judicial system. Staying the mandate here would invert "the usual relationship" between the district court and this Court, precluding the district court from exercising its typical role of analyzing—in the first instance—the effect of intervening authority on the plaintiffs' claims. *See Ecological Rts. Found.*, 230 F.3d at 1154. This Court has cautioned: "As a federal court of appeals, we must always be mindful that we are a court of review, not first view." *Roth v. Foris Ventures, LLC*, 86 F.4th 832, 838 (9th Cir. 2023). Heeding that caution, this Court should deny the City's motion, issue the mandate in the ordinary course, and remand this case to the district court.

## CONCLUSION

For the foregoing reasons, the Court should deny the City's motion.

Date: January 26, 2024          Respectfully submitted,

/s/ *Neil K. Sawhney*
Neil K. Sawhney
ACLU FOUNDATION OF NORTHERN
CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
(415) 293-6333
nsawhney@aclunc.org

*Counsel for Plaintiffs-Appellees*

9

**CERTIFICATE OF COMPLIANCE**

I certify that this opposition contains 2,585 words, excluding the items exempted by Fed. R. App. P. 32(f). I certify this opposition complies with the length limits set forth in Fed. R. App. P. 27(d)(2) and Ninth Circuit Local Rule 27-1(1)(d). The opposition's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Garamond font.

Date:  January 26, 2024         /s/ Neil K. Sawhney
                                Neil K. Sawhney
                                ACLU FOUNDATION OF NORTHERN
                                CALIFORNIA

                                *Counsel for Plaintiffs-Appellees*

10